David A. Berstein (State Bar No. 204472)
Nicolas D. Myers (State Bar No. 251809)
MYERS BERSTEIN LLP
2 Executive Circle, Suite 205
Irvine, California 92614
T: 949.825.5590
*david@mybelaw.com*

Attorneys for Plaintiff TIVOLI LLC, NEO-NEON LED USA HOLDINGS, LTD,
And AMERICAN LIGHTING, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TIVOLI, LLC, a California limited liability company; NEO-NEON LED USA HOLDINGS, LTD., a British Virgin Islands Limited Company, and AMERICAN LIGHTING, INC., a Delaware corporation, | Case No. |
| | **COMPLAINT FOR DAMAGES** |
| Plaintiffs, | 1. **Copyright Infringement Under 17 U.S.C. §101,** *et seq.* |
| v. | 2. **Federal Trademark Infringement in Violation of 15 U.S.C. § 1114** |
| TARGETTI SANKEY, S.p.A., an Italian business entity; TARGETTI POULSEN USA, INC., a Florida corporation; DURALAMP, S.p.A., an Italian business entity; HANGZHOU TARGETTI LIGHTING CO., LTD, a Chinese business entity; MARIE BIRMINGHAM a/k/a MARIE PARIS, an individual; GREGORY S. SMITH, an individual; and DOES 1 through 20, | 3. **False Designation of Origin/Federal Unfair Competition Under 15 U.S.C. § 1125(a)** |
| | 4. **Federal Trademark Dilution in Violation of 15 U.S.C. § 1125(c)(1)** |
| | 5. **Misappropriation of Trade Secrets** |
| | 6. **Intentional Interference with Prospective Economic Advantage** |
| | 7. **Breach of Fiduciary Duties** |
| | 8. **Violation of Corporate Opportunity Doctrine** |
| Defendants. | 9. **Breach of Contract** |
| | 10. **Breach of Implied Covenant of Good Faith and Fair Dealing** |
| | 11. **Breach of Contract** |
| | 12. **Breach of Implied Covenant of Good Faith and Fair Dealing** |

**13. Conversion**

**14. Conversion**

**15. Conversion**

**16. Civil Conspiracy**

**17. Unjust Enrichment**

**18. False Advertising in Violation of Cal. Business & Professions Code §17500, et seq.**

**19. Violation of California Business & Professions Code §§ 17200, *et seq.***

**-JURY TRIAL DEMANDED-**

Plaintiffs TIVOLI LLC, NEO-NEON LED USA HOLDINGS, LTD., and AMERICAN LIGHTING, INC. hereby complain and allege as follows:

## PARTIES

1.     Plaintiff TIVOLI, LLC (hereinafter "TIVOLI" and/or "Plaintiff"), is a California limited liability company with its principal place of business located at 15602 Mosher Avenue, Tustin California 92780.

2.     Plaintiff NEO-NEON LED USA HOLDINGS, LTD. (hereinafter "NEO-NEON") is a limited company organized under the laws of the British Virgin Islands with its principal place of business located at 7660 East Jewell, Suite A, Denver, Colorado 80231.

3.     Plaintiff AMERICAN LIGHTING, INC. (hereinafter "AMERICAN LIGHTING")  is a corporation organized under the laws of Delaware with its principal place of business located at 7660 East Jewell, Suite A, Denver, Colorado 80231.

4.     Upon information and belief, Defendant TARGETTI SANKEY, S.p.A. (hereinafter "TARGETTI SANKEY") is, and at all times mentioned herein was, a Italian business entity with its principal place of business located at Via Pratese, 164, 50145 Florence, Italy. On information and belief, TARGETTI SANKEY owns and is

Myers Berstein LLP
2 Executive Circle, Suite 205
Irvine, California 92614

the parent company of co-Defendants TARGETTI POULSEN USA, INC., DURALAMP, S.p.A., and HANGZHOU TARGETTI LIGHTING CO., LTD.

5.   Upon information and belief, Defendant TARGETTI POULSEN USA, INC. (hereinafter "TARGETTI POULSEN") is, and at all times mentioned herein was, a Florida corporation with its principal place of business located at 2125 Colby Avenue, Los Angeles, California 90025.

6.   Upon information and belief, Defendant DURALAMP, S.p.A. (hereinafter "DURALAMP") is, and at all times mentioned herein was, a Italian business entity with its principal place of business located at Via di Limite 148, 50013 Campi Bisenzio, Florence, Italy.  It is believed that DURALAMP currently employs co-Defendants MARIE BIRMINGHAM and GREGORY SMITH.

7.   Upon information and belief, Defendant HANGZHOU TARGETTI LIGHTING CO., LTD (hereinafter "HANGZHOU") is, and at all times mentioned herein was, a Chinese business entity with its principal place of business located at No. 46, Gouyun Road, Liangzhu Town, Yuhang District, Hangzhou, Zhejiang 311112, China.

8.   Upon information and belief, Defendant MARIE BIRMINGHAM also known as MARIE PARIS (hereinafter "BIRMINGHAM") is an individual and resident of California and this judicial district.  Defendant BIRMINGHAM is the former Chief Executive Officer (CEO) of Plaintiff TIVOLI.  Upon information and belief, Defendant BIRMINGHAM is currently employed by co-Defendant DURALAMP.

9.   Upon information and belief, Defendant GREGORY S. SMITH (hereinafter "SMITH") is an individual and resident of California and this judicial district. Defendant SMITH is the former Director of Sales and Product Development of Plaintiff TIVOLI.  Upon information and belief, Defendant SMITH is currently employed by co-Defendant DURALAMP.

10.   Defendants Does 1 through 20, whose identities and addresses are unknown to Plaintiff, are individuals and/or corporate entities that engaged in the unlawful activities

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

complained of herein.  The Complaint will be amended, if appropriate, to include the name or names of these individuals when such information becomes available.

11.    Plaintiffs are informed and believe and thereon allege that at all times herein mentioned each of the Defendants, including all Defendants sued under fictitious names, and those agents, employees, and/or independent contractors identified herein, were the agent and/or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of this agency or employment.

12.    Defendants TARGETTI SANKEY, TARGETTI POULSEN, DURALAMP, HANGZHOU, BIRMINGHAM, SMITH, and Does 1 - 20 shall be collectively referred to in this Complaint as "Defendants" when applicable.

## JURISDICTION AND VENUE

13.    This action arises under the Copyright Act of 1976, 17 U.S.C. §§101 *et. seq.*, and the Lanham Trademark Act of 1946,15 U.S.C. § 1051, *et seq.*, conferring Federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction on Plaintiffs' state law claims under 28 U.S.C. § 1367.

14.    Venue is proper in this District pursuant to 28 U.S.C. §§1391(b)(2) as: (a) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; (b) Defendants conduct business in this District; (c) the unlawful acts of Defendants complained of herein have been committed within this District and have had or will have had effect in this District; (d) the written agreements/contracts as identified and described more thoroughly below were entered into by the respective parties in this District; (e) the written agreements/contracts as identified and described more thoroughly below conferred jurisdiction in this District; and (f) Plaintiff TIVOLI, a resident of this District, has been and will continue to be damaged by Defendants' unlawful acts.

/ / /

/ / /

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

**INTRODUCTION**

15.    The essence of this action is that Plaintiff TIVOLI was, until recently, owned equally by Plaintiff NEO-NEON and Defendant TARGETTI SANKEY.  In or about May 2014, Plaintiffs NEO-NEON and AMERICAN LIGHTING paid substantial consideration to Defendant TARGETTI SANKEY in order to purchase TARGETTI SANKEY's interest in Plaintiff TIVOLI, only to have Defendant TARGETTI SANKEY, in collaboration with the other named Defendants, steal and abscond with Plaintiff TIVOLI's intellectual property, trade secrets, and other valuable assets and begin competing directly against Plaintiff TIVOLI using TIVOLI's property.

**GENERAL FACTUAL ALLEGATIONS**

**Plaintiff TIVOLI's Business**

16.    As the market leader in emerging LED linear lighting, Plaintiff TIVOLI offers a complete line of architectural, signage and auditorium linear LED based lighting systems.   Their products are flexible, adaptable energy-saving LED-based linear lighting products for broad architectural / commercial applications, both indoor and out.  TIVOLI's architecturally significant designs have been providing visible delineation or concealed illumination effects for over forty-five years.

17.    Plaintiff TIVOLI's new and innovative technology and related materials are solely owned by Plaintiff TIVOLI and are entitled to protection under Federal and State laws including copyright law, trademark law, and trade secret law, among others.  The copyrights, trademarks, and trade secrets owned by Plaintiff TIVOLI and relevant to this action in light of Defendants' misappropriation thereof are detailed below.

**General Copyright Allegations**

18.    As is standard in the industry, Plaintiff TIVOLI, as part of the development, manufacture, and sales process, prepares and distributes specification sheets that detail the technical specifications, components, and pricing of its products.  Each of these specification sheets contains original text, photograph(s), and/or 2-D artwork.

19.     Plaintiff TIVOLI has filed applications to obtain Certificates of Registration for the following specification sheets and/or images contained therein:

    a.     TIVOLI COVELUM DESIGNER & STANDARD SERIES SPECIFICATION SHEET (originally published on or about June 4, 2008);

    b.     TIVOLI COVELUM DESIGNER & STANDARD SERIES IMAGE (originally published on or about June 4, 2008);

    c.     TIVOLI TIVOTAPE INDOOR HO HIGH OUTPUT 4.4 SPECIFICATION SHEET (originally published on or about July 6, 2007);

    d.     TIVOLI TIVOTAPE INDOOR HO HIGH OUTPUT 4.4 IMAGE (originally published on or about July 6, 2007);

    e.     TIVOLI TIVOTAPE HIGH OUTPUT SPECIFICATION SHEET (originally published on or about July 6, 2007);

    f.     TIVOLI TIVOTAPE HIGH OUTPUT IMAGE (originally published on or about July 6, 2007);

    g.     TIVOLI TIVOTAPE INDOOR HIGH OUTPUT SPECIFICATION SHEET (originally published on or about May 3, 2010);

    h.     TIVOLI PLATINUM COVE LED SPECIFICATION SHEET (originally published on or about October 9, 2009);

    i.     TIVOLI PLATINUM COVE LED IMAGE (originally published on or about October 9, 2009);

    j.     TIVOLI INFINITY 5000 SPECIFICATION SHEET (originally published on or about June 2005);

    k.     TIVOLI INFINITY 5000 IMAGE (originally published on or about June 2005);

    l.     TIVOLI COVELUM 120/277 SPECIFICATION SHEET (originally published on or about January 6, 2014);

    m.     TIVOLI COVELUM 120/277 IMAGE (originally published on or about January 6, 2014);

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

n.   TIVOLI IGRAZE INDOOR WALL GRAZER SPECIFICATION SHEET (originally published on or about May 22, 2013); and

o.   TIVOLI IGRAZE INDOOR WALL GRAZER IMAGE (originally published on or about May 22, 2013).

20.   Collectively, the above works a – o are referred to hereinafter as "TIVOLI COPYRIGHTS" or the "TIVOLI SPECIFICATION SHEETS."  It is worth noting that Plaintiff TIVOLI is the author and owner of many more specification sheets related to its entire line of products—the foregoing are just the particular ones that Plaintiff TIVOLI knows to have been unfairly converted by Defendants.  It is possible, if not likely, that Defendants have misappropriated many more, which Plaintiffs will allege once discovered.

21.   Plaintiff has complied in all respects with the Copyright Act of 1976, 17 U.S.C. §101 *et. seq.* and all other laws governing copyright as to the TIVOLI SPECIFICATION SHEETS.  At this time, Plaintiff is awaiting Copyright Registration Numbers from the United States Copyright Office and will amend this Complaint to reflect such Copyright Registration Numbers once ascertained.

22.   Since the subject TIVOLI COPYRIGHTS were created, Plaintiff TIVOLI has been, and still is, the sole author and exclusive holder of all rights, title, and interest in and to the copyrights to the TIVOLI COPYRIGHTS. TIVOLI has not granted any license or right to any person or entity to use the TIVOLI COPYRIGHTS except solely for the promotion of TIVOLI products.

23.   The TIVOLI COPYRIGHTS are vital to Plaintiff TIVOLI's ongoing business concerns and, more specifically, Plaintiff TIVOLI's efforts to secure work projects from current and potential customers.

## General Trademark Allegations

24.   Plaintiff TIVOLI owns all right, title, and interest in the incontestable TIVOLI® trademarks which are the subject of United States Trademark Registration Nos.

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

1,013,476 (reg. date June 17, 1975), 1,106,595 (reg. date November 21, 1978), and 1,143,207 (reg. date December 16, 1980).

25. In addition to the aforementioned trademark registrations, Plaintiff TIVOLI owns all right, title, and interest in the following trademarks which are the subject of United States Trademark Applications:

- COVELUM™ (Ser. No. 86/326,229)
- IGRAZE™ (Ser. No. 86/332,701)
- INFINITY 5000™ (Ser. No. 86/326,243)
- PLATINUM COVE™ (Ser. No. 86/328,247)
- TIVOTAPE™ (Ser. No. 86/326,210)

26. Unless otherwise stated, TIVOLI's trademarks for TIVOLI®, COVELUM™, IGRAZE™, INFINITY 5000™, PLATINUM COVE™, and TIVOTAPE™ are referred to herein collectively as the "TIVOLI TRADEMARKS." It is worth noting that Plaintiff TIVOLI is the owner of still more trademarks which it uses on or in connection with its line of products—the foregoing are just the particular ones that Plaintiff TIVOLI knows to have been infringed upon by Defendants. It is possible, if not likely, that Defendants have infringed others, which Plaintiffs will allege once discovered.

27. As a result of the extensive, exclusive, and continued use of the TIVOLI TRADEMARKS in connection with the advertisement and sale of electric lighting products, consumers have come to recognize and identify Plaintiff's TIVOLI TRADEMARKS as representative of exclusive, high quality electric lighting products sold by Plaintiff TIVOLI. The TIVOLI TRADEMARKS have become a valuable asset of Plaintiff TIVOLI as well as a symbol of its goodwill and positive reputation.

## Trade Secrets

28. Plaintiff TIVOLI is also the owner of certain trade secrets including but not limited to customer lists and quotations; pricing information for products, product components and materials; the TIVOLI SPECIFICATION SHEETS; and other documents and information that TIVIOLI stored electronically on its server on what it

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

refers to as its engineering drive (the engineering drive may hereinafter be referred to as the "TIVOLI ENGINEERING DRIVE" and the information thereon may hereinafter "TIVOLI TRADE SECRETS").

29.     The TIVOLI ENGINEERING DRIVE contains approximately 22,395 proprietary files including design and testing files; product drawings and images; photometric files; product specifications sheets; manufacturing information including assembly instructions; materials info including product components and hardware; product files for specific customers; product installation and use instructions; customer and vendor files including all customer project information; commission statements; forecasts and sales plans; cost reports; inventory reports; sales reports; marketing files; industry trade show info; prospective customer (opportunity) files; and Tivoli forms and templates.

30.     The TIVOLI SPECIFICATION SHEETS, TIVOLI TRADEMARKS, and TIVOLI TRADE SECRETS may be collectively referred to as the "TIVOLI INTELLECTUAL PROPERTY" herein.

**Entity Background**

31.     In or about March 1999, Defendant TARGETTI SANKEY acquired Tivoli Industries, Inc. (founded over 45 years ago) and changed the company name to Targetti North America, Inc. (TGNA).  Both companies manufactured and sold non-competing electric lighting products.

32.     On or about January 1, 2004, Defendant TARGETTI SANKEY formed Plaintiff TIVOLI, LLC and was the sole member of the new limited liability company.  Plaintiff TIVOLI did and does specialize in the development and manufacturing of architectural and venue lighting products.  TIVOLI was the first to introduce indicator type LEDs into tubing, aisle, and step lighting products over two decades ago.  Many of the standard products used by all theaters today including the LED Step Light, Usher LED Wall lighting, the Beacon LED Seat Light, and Two-tone Bull Nose for use in Stadium theaters were Tivoli innovations.

33.   In early 2004, NEO-NEON, a Chinese lighting company, negotiated with TARGETTI SANKEY and purchased fifty percent (50%) ownership of TIVOLI.

34.   In 2007, TARGETTI SANKEY acquired a Danish commercial lighting company called Louis Poulsen Lighting.  Louis Poulsen Lighting, as a subsidiary of TARGETTI SANKEY, is an international lighting manufacturer who serves the professional and private lighting markets, and produces and develops lighting solutions for indoor and outdoor applications.

35.   In or about 2012, TIVOLI sought out factories in Asia to manufacture certain products and, because of their long relationship with TARGETTI SANKEY, TIVOLI entered into manufacturing relationships with Defendants DURALAMP and HANGZHOU.

36.   Defendant DURALAMP, as a subsidiary of TARGETTI SANKEY, is, and at all times mentioned herein was, a manufacturer of electric lighting products including incandescent, halogens, fluorescents, and discharge lamps.

37.   Defendant HANGZHOU as a subsidiary of TARGETTI SANKEY, is, and at all times mentioned herein was, a manufacturer of electric lighting products. HANGZHOU exports electric lighting products to TIVOLI with many products entering the United States through the Port of Long Beach.

38.   On or about May 15, 2014, TARGETTI SANKEY sold its fifty percent (50%) ownership interest in TIVOLI for Three Million U.S. Dollars ($3,000,000.00) to NEO-NEON and AMERICAN LIGHTING making NEO-NEON a fifty-one percent (51%) owner and AMERICAN LIGHTING a forty-nine percent (49%) owner of TIVOLI. The aforementioned transaction is memorialized in a written document entitled "TIVOLI, LLC LIMITED LIABILITY COMPANY INTEREST PURCHASE AGREEMENT" which is attached hereto as Exhibit "A" to the Complaint.  Exhibit A is hereinafter referred to as "TIVOLI PURCHASE AGREEMENT".

39.   Little did Plaintiffs NEO-NEON and AMERICAN LIGHTING know that Defendant TARGETTI SANKEY planned on selling its share in TIVOLI, take

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

possession of the $3,000,000.00, and then immediately, in concert with its subsidiaries, steal TIVOLI's technology, confidential and proprietary information, intellectual property, trade secrets, and key personnel to compete with TIVOLI and target TIVOLI's largest and most lucrative clients and/or prospective clients.

**Unlawful Activities by Defendants Targetti Poulsen, Duralamp, and Hangzhou**

40.    Upon information and belief, Plaintiffs allege that soon following the May 15, 2014 transaction wherein Defendant TARGETTI SANKEY sold its fifty percent (50%) ownership interest in TIVOLI to NEO-NEON and AMERICAN LIGHTING, Defendant TARGETTI SANKEY, in collaboration with Defendants TARGETTI POULSEN, DURALAMP, HANGZHOU, BIRMINGHAM, and SMITH engaged in, and are continuing to engage in, the unlawful solicitation and fulfillment of lighting projects from existing and prospective customers of TIVOLI using, without authorization, the TIVOLI COPYRIGHTS, TIVOLI TRADEMARKS, and TIVOLI TRADE SECRETS including those documents, information, and things found on the TIVOLI ENGINEERING DRIVE.  Upon information and belief, Defendants, and each of them, planned and conspired to engage in these acts prior to sale by TARGETTI SANKEY and engaged in certain violative acts prior to the sale as alleged below.

41.    Upon information and belief, Plaintiff alleges that the customers unfairly solicited include, but are not necessarily limited to:

      a.     The Baha Mar, LTD project in the Bahamas;

      b.     The Wynn Resorts projects in Macau and Cotai, China;

      c.     The Disney Shanghai Resort project in Shanghai, China;

      d.     FENDI at its retail location on Madison Avenue in New York City;

      e.     The Four Seasons Hotel in Dubai, United Arab Emirates; and

      f.     The Saxony Hotel in Miami, Florida.

42.    Collectively, these customers and the projects identified will be identified herein as the "CUSTOMER PROJECTS."

/ / /

Myers Berstein LLP
2 Executive Circle, Suite 205
Irvine, California 92614

---

11
Complaint

43.    Upon information and belief, Plaintiff further alleges that Defendants TARGETTI SANKEY, TARGETTI POULSEN, DURALAMP and/or HANGZHOU unlawfully came into possession of the TIVOLI SPECIFICATION SHEETS through the misappropriation of the TIVOLI SPECIFICATION SHEETS by Defendants BIRMINGHAM and SMITH. Defendants TARGETTI SANKEY, TARGETTI POULSEN, DURALAMP and/or HANGZHOU then altered the TIVOLI SPECIFICATION SHEETS to add their name in place of Plaintiffs to pass TIVOLI SPECIFICATION SHEETS off as their own.  Defendants, however, did not modify the text or the images contained in the specification sheets nor did they remove TIVOLI's TIVOTAPE™ or COVELUM™ trademarks before providing such specification sheets to current and/or prospective customers of TIVOLI and possibly others. Upon information and belief, Defendants were so sloppy with their misappropriation/infringement, that they even forgot to remove Plaintiff TIVOLI's name and/or trademarks from some of the SPECIFICATION SHEETS they sent out. Either that, or, they wanted to make extra sure that consumers believed (read—were intentionally confused into believing) that they were TIVOLI or were still associated with TIVOLI.

44.    Notwithstanding other claims based on these actions, including state-based unfair competition, inference, and conversion claims, Defendants' unauthorized use of the text and images of the aforementioned TIVOLI SPECIFICATION SHEETS and the TIVOTAPE™ or COVELUM™ trademarks used therein constitutes copyright and trademark infringement.

45.    As is standard in the industry, TIVOLI had certain tooling designed and manufactured in order for it to produce its products, all at great expense and effort to TIVOLI.  In addition to the aforementioned infringing acts, Defendants TARGETTI SANKEY, TARGETTI POULSEN, DURALAMP and/or HANGZHOU have converted certain tooling owned by TIVOLI.   The converted tooling includes:

     a.    TV5730511 Covelum socket top mold Rev C;

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

b. TV5730512 Covelum socket base mold Rev C;

c. TV9140005 Covelum contact tooling Rev C;

d. Platinum Series II tooling for Platinum assembly machine;

e. Platinum hand assembly tool;

f. TV2160121 Platinum series II contact tooling;

g. TV2160125 Platinum series II wire base mold tooling;

h. TV2160126 Platinum series II SMD cover mold tooling; and

i. TV2160126 Platinum series II 4 post cover mold tooling.

(Hereinafter collectively referred to as "TIVOLI TOOLING.")

46. Furthermore, Defendants TARGETTI SANKEY, TARGETTI POULSEN, DURALAMP and/or HANGZHOU have made use of confidential, proprietary, and/or trade secret customer lists, customer information, financial data, and customer quotes. Upon information and belief, in some instances, Defendants have unabashedly converted clients, representing that they will now be fulfilling the orders placed with TIVOLI.

47. The aforementioned conduct by Defendants is particularly harmful to Plaintiff TIVOLI as Plaintiff has invested substantial time and financial resources to, among other things: (1) develop new products and technologies both generally and/or to accommodate a particular customer's needs; (2) develop the tooling to manufacture its products; (3) manufacture its products; (4) market and promote its products; (5) foster valuable customer relationships; and (6) competitively quote new customer projects.

48. By their conduct, Defendants TARGETTI SANKEY, TARGETTI POULSEN, DURALAMP and/or HANGZHOU have unlawfully misappropriated and used Plaintiff's property, products, and technology, including the proprietary/trade secret information contained on the TIVOLI ENGINEERING DRIVE and have gained an unfair competitive advantage over Plaintiff as a result thereof.

/ / /

/ / /

## Unlawful Activities of Marie Birmingham

49.     Defendant BIRMINGHAM served as Plaintiff TIVOLI's Chief Executive Officer from March 1, 2008 through May 15, 2014.  Upon information and belief, Defendant BIRMINGHAM currently is employed by Defendant DURALAMP with a title of US Business Development Manager.

50.     Defendant BIRMINGHAM's job responsibilities at TIVOLI included overall management of all activities within TIVOLI with specific supervision and decision-making with regard to sales, marketing, and engineering of TIVOLI's products.  She was further responsible for and did maintain relationships with important clients of TIVOLI including The Irvine Company, Baha Mar, and Wynn Resorts Limited.  Defendant BIRMINGHAM closely managed co-Defendant SMITH's activities as described below and in particularly those involving key customers and large customer projects.

51.     Pursuant to a Severance Agreement between TIVOLI and BIRMINGHAM dated May 15, 2014, the parties mutually agreed to the termination of BIRMINGHAM' employment with TIVOLI.  As consideration, BIRMINGHAM did receive a generous severance payment and a payment for insurance benefits.

52.     Upon information and belief, Plaintiff alleges that prior to her termination, Defendant BIRMINGHAM did engage in acts detrimental to TIVOLI and in violation of her obligations as CEO and fiduciary to TIVOLI.  More specifically, it is alleged that Defendant BIRMINGHAM acted to steal the CUSTOMER PROJECTS from Plaintiff TIVOLI and delivered said projects to co-Defendants TARGETTI SANKEY, TARGETTI POULSEN, DURALAMP, and/or HANGZHOU.

53.     Upon information and belief, Plaintiff alleges that at least as early as February 2014, Defendant BIRMINGHAM began to arrange meetings between representatives of Baha Mar and Wynn Resorts with representatives of DURALAMP to begin the process of unlawful conversion of these clients from Plaintiff to DURALAMP.

/ / /

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

54.     Additionally, Defendant BIRMINGHAM provided samples of TIVOLI products developed specifically for the Baha Mar and Wynn Resorts to DURALAMP for testing to determine whether DURALAMP could duplicate the products so that these large and lucrative projects could be underbid and won by DURALAMP to the harm of TIVOLI.

55.     Within days of her departure from TIVOLI, Defendant BIRMINGHAM, on behalf of DURALAMP, sent an email to a representative of the Baha Mar project attaching various specification sheets (which still contained the TIVOLI COPYRIGHTS and TIVOLI TRADEMARKS) in an attempt to solicit the Baha Mar project.   Following TIVOLI's receipt of purchase orders from the Fanto Group, purchasing agent for the Baha Mar project, to TIVOLI, the Fanto Group received a quotation from DURALAMP for the identical products based upon TIVOLI specifications. Having stolen Plaintiff's tooling, specifications, intellectual property, and proprietary information, DURALAMP had zero dollars invested in product research and development and was also aware of exactly what Plaintiff quoted for the work. Not surprisingly, DURALAMP's quotation to the Fanto Group underbid TIVOLI's quote and a purchase order was submitted to DURALAMP from the Fanto Group on June 30, 2014.   It is believed, and based upon that belief alleged that DURALAMP is fulfilling the purchase order.

56.     In addition to the above actions, Defendant BIRMINGHAM destroyed emails from *mariep@tivoliusa.com* and/or diverted work emails to her personal email account at *birms@att.net* and removed company property containing proprietary documents and information.  Such property include expense reports documents, the SIM cards from her company-owned iPad and iPhone allowing for the transfer of TIVOLI proprietary information to outside mobile devices, the aforementioned proprietary specifications sheets and copies of customer quotes containing competitive information which, upon information and belief, have already been used to the detriment of TIVOLI.

/ / /

/ / /

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

**Unlawful Activities of Gregory Smith**

57.   Defendant SMITH served as Director of Sales and Product Development for Plaintiff TIVOLI from on or about September 13, 2007 to about May 23, 2014, when he tendered his resignation.  Upon information and belief, Defendant SMITH is currently employed by DURALAMP as its U.S. Technical Manager.

58.   As Director of Sales and Product Development, Defendant SMITH managed the Product Engineering Department of TIVOLI and was responsible for the development of new products based primarily on custom project requirements.  Some of these products were then added to the standard product offering by TIVOLI.  Defendant SMITH was also responsible for maintaining TIVOLI's relationship with key customers and projects and for sourcing components and identifying new factories to manufacture TIVOLI products.

59.   During his employment with TIVOLI, Defendant SMITH developed numerous TIVOLI products including: Illumiline, Versiline, Covelum 120, Covelum Designer Series LED Whites, Covelum LED, Platinum Cove LED, Tivotape, Monogram Room Number, Beacon Outdoor, Monogram LED Seat Row Indicator, Vetrinini, Vetrinella, Wynn Gold Rose Covelum, custom lighting controls, and Tivoli Colormix.  The proprietary/trade secret information related to these products are all contained on the previously identified TIVOLI ENGINEERING DRIVE.

60.   As a contingency to his employment with TIVOLI, Defendant Smith was required to execute and complete certain agreements, including an EMPLOYMENT AGREEMENT, a CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT, INVENTION ASSIGNMENT AGREEMENT, and a SECRECY AGREEMENT (hereinafter collectively referred to as the "SMITH AGREEMENTS").

61.   Pursuant to the EMPLOYMENT AGREEMENT (attached hereto as Exhibit "B"), which Defendant SMITH did execute on September 13, 2007, Defendant SMITH agreed to and did acknowledge the following terms:

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

[D]uring your employment with Tivoli, you shall not (i) accept any other employment, and/or (ii) engage in or have any interest in, directly or indirectly, any firm, corporation, business, or other business activity (whether as an employee, security holder, proprietor, officer, director, shareholder, agent, trustee, consultant, partner, creditor or otherwise except for a passive investment in a publicly traded company), whether or not pursued for pecuniary advantage, that is or may be competitive with Tivoli or that might place you in a competing position to that of Tivoli, that may create a conflict of interest (i.e., conflict with your responsibilities at and to Tivoli), or impair your independence or that of Tivoli with respect to the services performed by Tivoli.

Activities that violate this Agreement will include, but not be limited to, the following: (a) accepting, for your personal benefit, fees, commissions or anything of value in connection with any transaction on behalf of Tivoli; (b) accepting or offering unauthorized or illegal payments; (c) directly or indirectly diverting business from Tivoli or soliciting for employment for your personal benefit, or for the benefit of third parties, the services of any of Tivoli's clients, candidates, employees, consultants, agents or representatives; (d) disclosing confidential or proprietary information (as defined in the enclosed Confidentiality and Assignment of Invention Agreement) or using such information or your position with Tivoli for personal or financial gain; (e) personally taking advantage of business opportunities that might be of interest to Tivoli; and (f) serving as an officer, director, shareholder, agent, employee, consultant or promoter of, or in any other capacity for, any organization without the prior written approval of Tivoli.

62.   Pursuant to the CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT (attached hereto as Exhibit "C"), which Defendant SMITH did execute on September 13, 2007, Defendant SMITH agreed to and did acknowledge the following terms:

Executive acknowledges that solely by reason of Executive's employment by Company, Executive may/will come into possession of, have knowledge of, or contribute to Company, TARGETTI GROUP/NEO NEON INTL, and/or Clients Confidential Information [wherever situated and in whatever form, including but not limited to any printed, typewritten, handwritten, digitally recorded or otherwise recorded material, paper, electronic mail messages, digital databases, CD, disk, hard-drive, flash drives, software, audiotape, videotape and film] as defined herein.

Executive agrees that at all times, during or after employment, Executive will hold in trust, keep confidential, and not, directly or indirectly, disclose to any third party or make any use or cause to permit the exploitation, copying or summarizing of any Confidential Information or Inventions, as defined herein, of Company, TARGETTI GROUP/NEO NEON INTL, or Clients except for the benefit of Company, TARGETTI GROUP/NEO NEON INTL, or Clients and in the course of employment with Company. Executive further agrees not to cause the transmission, removal, or transport of Confidential Information or Inventions, as defined herein, from Company's principal place of business at 1513 East Saint Gertrude Place, Santa Ana, California 92705, from any other place where Company does business, from Company's equipment/personal property (i.e., computers -desktops/laptops), or from Executive's equipment whether used onsite or offsite to electronically access Company, TARGETTI GROUP/NEO NEON INTL, or Clients Confidential Information, without prior written approval of the MANAGER of Company ("MANAGER").

Executive agrees and understands that all of the Confidential Information is a valuable asset of Company and TARGETTI GROUP /NEO NEON INTL and is, will be, and shall at all times remain, the sole and exclusive property of Company and TARGETTI GROUP/NEO NEON INTL. Executive also understands and agrees that but for Executive's employment by Company, the Confidential Information would not have been disclosed to Executive.

Executive acknowledges that Executive is aware that the unauthorized disclosure of Company, TARGETTI GROUP/NEO NEON INTL, or Clients Confidential Information may be highly prejudicial to their interests, an invasion of privacy, and an improper disclosure.  Executive understands that Company operates nationally/internationally and that Executive must maintain and preserve all of the Confidential Information and knowledge thereof as unavailable to Company's and TARGETTI GROUP/NEO NEON INTL competitors, the industry, and the general public in order to protect Company's and TARGETTI GROUP/NEO NEON INTL business, competitive position, and goodwill, since Company and TARGETTI GROUP/NEO NEON INTL derive a competitive advantage in the marketplace by maintaining the Confidential Information and knowledge thereof as secret and unavailable to Company's and TARGETTI GROUP/NEO NEON INTL competitors and the public.

Executive agrees that Executive will not, during the period of employment with Company, directly or indirectly, either for Executive or for any other person or entity: (1) engage in any employment or activity other than for Company in any business in which Company and/or TARGETT!

GROUP/NEO NEON INTL is engaged or contemplates engaging; (2) induce any other Executive of or consultant to Company and/or TARGETTI GROUP/NEO NEON INTL to engage in any such employment or activity; (3) solicit any Clients or potential Clients of Company and/or TARGETTI GROUP/NEO NEON INTL for services similar to those performed by Company and/or TARGETTI GROUP/NEO NEON INTL even though not directly competitive with such services; or (4) own or have an ownership interest in any company directly competing with the Company and/or TARGETTI GROUP/NEO NEON INTL

Executive agrees not to, directly or indirectly, either for Executive or for any other person or entity, engage in competition with Company and/or TARGETTI GROUP/NEONEON INTL, at any time after the termination of Executive's employment with Company, while making use of Company and/or TARGETTI GROUP/NEO NEON INTL Confidential Information or Inventions, as defined in this Agreement, or any other matter relating to Company's and/or TARGETTI GROUP/NEO NEON INTL's business that Executive may in any way acquire by reason of Executive's employment with Company.

Executive acknowledges and agrees that all Inventions belong to and shall be the sole property of Company subject to the provisions of this Agreement. Executive assigns to Company all right, title, and interest Executive may have or may acquire in and to all Inventions. Executive agrees to sign and deliver to Company (either during or subsequent to Executive employment) such other documents as Company considers desirable to evidence the assignment of all rights of Executive, if any, in any Inventions to Company and Company' s ownership of such Inventions. Any provision in this Agreement requiring Executive to assign rights to an Invention does not apply to any invention that qualifies under California Labor Code §2870, which section is reproduced in the attached Written Notification to Executive and marked as Schedule "B".

In the event of termination (voluntary or otherwise) of Executive's Employment with Company, Executive agrees, promptly and without request, to deliver to and inform Company of all documents and data [wherever situated and in whatever form, including but not limited to any printed, typewritten, handwritten, digitally recorded or otherwise recorded material, paper, electronic mail messages, digital databases, CD, disk, hard-drive, flash drives, software, audiotape, videotape and film.] pertaining to Executive's employment and Confidential Information and Inventions of Company, TARGETTI GROUP/NEO NEON INTL, or Clients, whether prepared by Executive or otherwise coming into Executive's possession or control, and to sign Schedule "C" to this

Myers Berstein LLP
2 Executive Circle, Suite 205
Irvine, California 92614

Agreement. Executive will not retain any written or other tangible material containing any information concerning or disclosing any of the Confidential Information or Inventions of Company, TARGETTI GROUP/NEO NEON INTL, or Clients. Executive recognizes that the unauthorized taking of any of Company's, TARGETTI GROUP/NEO NEON INTL's, or Clients' trade secrets is a crime under California Penal Code §499(c) and is punishable by imprisonment in a state prison or in a county jail for a time not exceeding one year, or by a fine not exceeding five thousand dollars ($5000), or by both such fine and such imprisonment. Executive further recognizes that such unauthorized taking of Company's, TARGETTI GROUP/NEO NEON INTL's or Clients trade secrets could also result in civil liability under California's Uniform Trade Secrets Act (Civil Code §§3426-3426.11 ), and that willful misappropriation may result in an award against Executive for triple the amount of Company's and/or TARGETTI GROUP/NEO NEON INTL's damages and Company's and/or TARGETTI GROUP/NEO NEON INTL's attorneys' fees and costs in collecting such damages.

63.   As part of this agreement, Defendant SMITH represented and warranted that he was not the owner of any prior inventions.

64.   Pursuant to the INVENTION ASSIGNMENT AGREEMENT (attached hereto as Exhibit "D"), which Defendant SMITH did execute on September 14, 2007, Defendant SMITH agreed to and was/is obligated to the following terms:

In connection with Employee's activities on behalf of Tivoli, Employee has had access or may in the future have access to certain proprietary or Confidential Information, Copyrighted material, Inventions and/or Trade Secrets (collectively "Company Confidential Information") of Tivoli. Employee recognizes the proprietary and sensitive nature of the Company Confidential Information. Employee shall abide by all Tivoli rules and procedures, including but not limited to any secrecy agreement signed by Employee, designed to protect its proprietary information and to preserve and maintain all such information in strict confidence during his/her employment by Tivoli and as long thereafter as such information is confidential or proprietary to Tivoli. Employee shall not use, disclose, or in any other way use or disseminate such information except as authorized in writing by duly authorized representatives of Tivoli. Such authorization shall be given or refused based solely on Tivoli's discretion.

Employee shall assign, and hereby does assign to Tivoli all interest in all Confidential Information, Trade Secrets, and Inventions, whether

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

copyrightable or patentable or not, made or conceived by Employee, solely or jointly for Tivoli, except for any Invention for which no equipment, supplies, facility or Trade Secret of Tivoli was used and which was developed entirely on Employee's own time, and (a) which does not relate (1) to the business of Tivoli or (2) to Tivoli's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by Employee for Tivoli. All Confidential Information, Trade Secrets, and Inventions assigned herein are hereinafter referred to as "Assigned Inventions." THIS AGREEMENT DOES NOT APPLY TO ANY INVENTIONS WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE &2870 (sic) (attached hereto as Exhibit A).

On termination of Employment, Employee shall return to Tivoli all copies of documents of information containing Tivoli's Trade Secrets, Inventions, Confidential Information, Copyrights and all other Confidential or proprietary work in his possession or control or generated within the scope of employment. Employee shall not deliver, reproduce, or in any way allow such documents or things to be delivered or used by any third parties without specific direction or consent of a duly authorized representative of Tivoli. During or after termination of employment, Employee shall not publish, release, or otherwise make available to any third parties any information describing Tivoli's Inventions, Confidential Information, Copyrighted materials or Trade Secrets without prior specific written authorization of Tivoli. Such authorization shall be given or refused based solely on Tivoli's discretion.

65.   Furthermore, Defendant SMITH did execute a SECRECY AGREEMENT (attached hereto as Exhibit "E") on September 14, 2007 wherein, among other things, he agreed to and was/is obligated to the following terms:

It is contemplated and intended that the Employee, in the course and during the term of his employment, will be engaged in work involving, and will have access to and become acquainted with various trade secrets, formulas, patterns, devices, secret inventions, processes and compilation of information, records and specifications which are owned by the Employer, and which are regularly used in the operation of the business of Employer. Employee shall not, and hereby agrees that he or she will not, disclose any of the aforesaid trade secrets, directly or indirectly, or use them in any way, whether during his or her employment with Employer or thereafter, except as required in the course of his or her employment.

All files, records, documents, drawings, specification, equipment, and similar items relating to the business of the Employer, whether prepared by the Employer or the Employee, or otherwise coming into his possession, shall remain the exclusive property of the Employer and shall not be removed from the premises of the employer under any circumstances whatsoever without the prior written consent of the Employer.

It is further contemplated that the Employee, in the course of and during the term of his employment, may or will be engaged in work involving past customer, present customers, and potential or future customers of Employer (all herein referred to as "customers"). The Employee shall not, for a period of one (1) year immediately following the termination of his or her employment with Employer, either directly, or indirectly:

     A.    Make known to any person, firm or corporation the name or address of any of the customers of the Employer or any other information pertaining to them; or

     B.    Call on, solicit, or take away, or attempt to call on, solicit, or take away any of the customers of the Employer on whom the Employee whall (sic) call or with whom he became acquainted during his or her employment with the Employer, either for himself or for any other person, firm or corporation. All records and books relating in any manner whatsoever to customers of Employer, whether prepared by Employee or otherwise obtained by him, shall be the exclusive property of Employer regardless of how obtained.

66.    Upon information and believe, Plaintiff alleges that Defendant SMITH did engage in acts and/or is engaging in acts detrimental to TIVOLI and in violation of his contractual obligations to TIVOLI pursuant to the SMITH Agreements. More specifically, Defendant copied and/or otherwise obtained and possesses an unauthorized copy of the TIVOLI ENGINEERING DRIVE which he has used to disclose and misuse TIVOLI's Confidential Information (as such terms are used in the SMITH Agreements) in conjunction with his acts to divert valuable customers from Plaintiff TIVOLI, in concert with Defendant BIRMINGHAM, including Baha Mar and Wynn Resorts, to co-Defendants TARGETTI SANKEY, TARGETTI POULSEN, DURALAMP and/or HANGZHOU.

67.    Upon information and belief, Plaintiff alleges that at least as early as February 2014, Defendant SMITH, acting in concert with Defendant BIRMINGHAM, began to arrange and/or participate in meetings between representatives of Baha Mar and Wynn Resorts with representatives of DURALAMP to benefit DURALAMP.    Additionally, Defendant SMITH has disclosed TIVOLI's product specifications and technology developed specifically for TIVOLI with co-Defendants TARGETTI SANKEY, TARGETTI POULSEN, DURALAMP and/or HANGZHOU to the harm of TIVOLI.

68.    Upon information and belief, Plaintiff alleges that Defendant SMITH removed from Plaintiff's premises certain technology, proprietary information, and other information and things owned by Plaintiff, all in violation of his contractual obligations. Specifically, Plaintiff alleges that prior to his resignation from TIVOLI, Defendant SMITH did copy, download, and/or did otherwise obtain a copy of the ENGINEERING DRIVE located on TIVOLI's computer server which contains the various categories of documents, information, and things identified hereinabove.

69.    Upon information and belief, Plaintiff alleges that since his resignation, Defendant SMITH has used and disclosed information from the TIVOLI ENGINEERING DRIVE to unfairly compete and assist the other Defendants in unfairly competing with Plaintiff TIVOLI by way of using technology, intellectual property, and proprietary information owned by Plaintiff TIVOLI to steal Plaintiff's existing clients and, also, solicit new clients.    Upon information and belief, Defendants are using this information and things and are currently sourcing materials and factories to make competing products using TIVOLI proprietary information for products to fulfill the requirements of certain customers including the Baha Mar and Wynn Resorts projects.

## FIRST CAUSE OF ACTION

## FOR COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §101, *et seq*.

## AGAINST ALL DEFENDANTS

70.    Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 69, inclusive, and incorporates them by reference herein.

Myers Berstein LLP
2 Executive Circle, Suite 205
Irvine, California 92614

71.    By means of the actions complained of herein, Defendants have infringed and will continue to infringe Plaintiff TIVOLI's copyright in and relating to the TIVOLI COPYRIGHTS by exploiting such TIVOLI COPYRIGHTS in connection with the unauthorized solicitation and sale of competitive electric lighting products as herein alleged.

72.    Plaintiff is entitled to an injunction restraining Defendants, and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws.

73.    Plaintiff is further entitled to recover from Defendants, and each of them, the damages Plaintiff has sustained, and will sustain, as a result of Defendants' wrongful acts as hereinabove alleged.  The amount of such damages cannot be determined at this time.  Plaintiff is further entitled to recover from Defendants, and each of them, the gains, profits, and advantages Defendants have obtained as a result of their wrongful acts as hereinabove alleged.  Plaintiff is at present, unable to ascertain the full extent of the gains, profits, and advantages Defendants have obtained by reason of their aforesaid acts of copyright infringement.

74.    Plaintiff is also entitled to damages, pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et. seq.,* for Defendants' willful and continued infringement of the Copyrighted Works.

**SECOND CAUSE OF ACTION**

**FEDERAL TRADEMARK INFRINGEMENT**

**IN VIOLATION OF 15 U.S.C. § 1114**

**AGAINST ALL DEFENDANTS**

75.    Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 74, inclusive, and incorporates them by reference herein.

76.    As herein alleged, Defendants' willful, deliberate and unauthorized use of Plaintiff TIVOLI's registered TIVOLI® trademarks has caused confusion and is likely to continue to cause confusion, mistake and deception in that consumers are likely to

associate and believe Defendants are associated with, connected to, affiliated with, authorized by, endorsed by, licensed by and/or sponsored by Plaintiff TIVOLI, in violation of Section 32(b) of the Lanham Act, 15 U.S.C. § 1114(1).

77. As a direct and legal result of Defendants' unauthorized use of Plaintiff's TIVOLI® trademark, Defendants have damaged and will continue to damage Plaintiff's goodwill and reputation, and have caused and are likely to continue to cause a loss of profits for Plaintiff. Defendants' actions have caused and, unless restrained and enjoined by the Court, will continue to cause irreparable harm to Plaintiff and to the public, who is confused by Defendants' unauthorized use of Plaintiff's TIVOLI® trademark. Plaintiff has no adequate remedy at law to prevent Defendants from continuing their infringing actions and from injuring Plaintiff.

78. As a further direct and legal result of Defendants' actions, Plaintiff has been damaged and will continue to sustain damage and is entitled to receive compensation arising from its lost profits and efforts necessary to minimize and/or prevent customer and consumer confusion, in an amount to be proven at the time of trial. In addition, Plaintiff is entitled to disgorge Defendants' profits, and is entitled to interest and to its attorney's fees and costs in bringing this action, all in an amount to be proven at the time of trial. Plaintiff is further entitled to injunctive relief as set forth above, and to all other and further forms of relief this Court deems appropriate.

79. The damages sustained by Plaintiff as a result of the conduct alleged herein should be trebled in accordance with 15 U.S.C. § 1117(b).

## THIRD CAUSE OF ACTION

### FALSE DESIGNATION OF ORIGIN/FEDERAL UNFAIR COMPETITION

### UNDER 15 U.S.C. § 1125(a)

### AGAINST ALL DEFENDANTS

80. Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 79, inclusive, and incorporates them by reference herein.

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

81.   As herein alleged, Defendants' unauthorized use of the TIVOLI TRADEMARKS in connection with their purported offering for sale and selling of exact or substantially similar electric lighting products constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because Defendants' use suggests a false designation of the origin of the goods that they are purporting to sell.

82.   As a direct and legal result Defendants' unauthorized use of the TIVOLI TRADEMARKS, Defendants have damaged and will continue to damage Plaintiff and Plaintiff's goodwill and reputation; and have caused and are likely to continue to cause a loss of profits for Plaintiff.   Defendants' actions have caused and will continue to cause irreparable harm to Plaintiff and to the public, who is confused by Defendants' unauthorized use of the TIVOLI TRADEMARKS, unless restrained and enjoined by this Court.   Plaintiff has no adequate remedy at law to prevent Defendants from continuing their infringing actions and from injuring Plaintiff.

83.   As a further direct and legal result of Defendants' actions, Plaintiff has been damaged and will continue to sustain damage and is entitled to receive compensation arising from Plaintiff's lost profits and efforts necessary to minimize and/or prevent customer and consumer confusion, in an amount to be proven at the time of Trial.   In addition, Plaintiff is entitled to disgorge Defendants' profits, and is entitled to interest and to its attorney's fees and costs in bringing this action, all in an amount to be proven at the time of Trial.   Plaintiff is further entitled to injunctive relief as set forth above, and to all other and further forms of relief this Court deems appropriate.

84.   Plaintiff is entitled to recover the damages caused by Defendants' material breaches of the Agreement in an amount pursuant to proof, as well as pre-judgment interest, costs of suit, and such other relief as the Court may deem appropriate.

/ / /

/ / /

/ / /

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

# FOURTH CAUSE OF ACTION

## FEDERAL TRADEMARK DILUTION

## IN VIOLATION OF 15 U.S.C. § 1125(c)(1)

## AGAINST ALL DEFENDANTS

85.    Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 84, inclusive, and incorporates them by reference herein.

86.    For nearly forty (40) years, Plaintiff TIVOLI has invested substantial financial resources to market and protect the TIVOLI® trademark which is the subject of United States Trademark Registration Nos. 1,013,476, 1,106,595, and 1,143,207.  As a result, the TIVOLI® trademark has become "famous" and "distinctive" pursuant to Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

87.    Plaintiff TIVOLI is informed and believes and thereon alleges, that notwithstanding Defendants' knowledge of Plaintiff's federal registrations, and common law rights in the TIVOLI® trademark, Defendants have commercially used, reproduced, copied, or colorably imitated the TIVOLI ® trademark, in connection with the sale, offering for sale, distribution and/or advertising of goods, including electrical lighting products, in a manner which has caused and will likely continue to cause confusion, mistake, or deception among the purchasing public as to the source of the goods.  Specifically, Defendants have used the TIVOLI® trademark in commerce to offer for sale and sell electric lighting products.  Not only have Defendants used the identical mark in commerce, they have used it for the identical products.  Defendants' conduct in this regard is likely to dilute the distinctive qualities of the TIVOLI® trademark by lessening the capacity of such mark to identify and distinguish Plaintiff's goods in the marketplace, and has resulted in an actual present injury to the TIVOLI® trademark, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. 1125 (c).

88.    As a direct and legal result of Defendants' unauthorized use of the TIVOLI® trademark, Defendants have damaged and will continue to damage Plaintiff TIVOLI's goodwill and reputation, and have caused and are likely to continue to cause a loss of

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

profits for Plaintiff TIVOLI.  Defendants' actions have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm to Plaintiff TIVOLI and to the public, who is confused by Defendants' unauthorized use of Plaintiff's TIVOLI® trademark.  Plaintiff TIVOLI has no adequate remedy at law to prevent Defendants from continuing their infringing actions and from injuring Plaintiff.

89.    As a further direct and legal result of Defendants' actions, Plaintiff TIVOLI has been damaged and will continue to sustain damage and is entitled to receive compensation arising from its lost profits and efforts necessary to minimize and/or prevent customer and consumer confusion, in an amount to be proven at the time of trial.  In addition, Plaintiff TIVOLI is entitled to disgorge Defendants' profits, and is entitled to interest and to its attorney's fees and costs in bringing this action, all in an amount to be proven at the time of trial.  Plaintiff is further entitled to injunctive relief as set forth above, and to all other and further forms of relief this Court deems appropriate.

90.    The damages sustained by Plaintiff TIVOLI as a result of the conduct alleged herein should be trebled in accordance with 15 U.S.C. § 1117(b).

## FIFTH CAUSE OF ACTION

### TRADE SECRET MISAPPROPRIATION

### (CAL. CIV. CODE § 3426 *ET. SEQ.*)

### AGAINST ALL DEFENDANTS

91.    Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 91, inclusive, and incorporates them by reference herein.

92.    Plaintiff is the owners of proprietary information and trade secrets described herein, which include, but are not limited to, customer lists and quotations; pricing information for products, product components and materials; the TIVOLI SPECIFICATION SHEETS; and Plaintiff TIVOLI'S documents and information found on the ENGINEERING DRIVE of its server.

Myers Berstein LLP
2 Executive Circle, Suite 205
Irvine, California 92614

93.    The ENGINEERING DRIVE contains approximately 22,395 proprietary files including design and testing files; product drawings and images; photometric files; product specifications sheets; manufacturing information including assembly instructions; materials info including product components and hardware; product files for specific customers; product installation and use instructions; customer and vendor files including all customer project information; commission statements; forecasts and sales plans; cost reports; inventory reports; sales reports; marketing files; industry trade show info; prospective customer (opportunity) files; and Tivoli forms and templates.

94.    These documents and information constitute Plaintiff TIVOLI's trade secrets which are comprised of information not generally known to the public or to other persons who can derive economic value from their use.

95.    As such, this information, to the extent not solely proprietary, confidential information, constitutes "trade secrets" under California's Uniform Trade Secrets Act, Cal. Civ. Code Section 3426, *et. seq.*

96.    Plaintiff TIVOLI has taken, and continues to take, reasonable steps to protect the secrecy of its trade secrets and other confidential information, including restricting access to the information and requiring parties to whom disclosure is necessary to agree not to disclose it (as evidenced by the SMITH Agreements).

97.    Defendants have assisted and/or actively participated in the actual or threatened misappropriation of Plaintiff's trade secrets by, without limitation, (a) on information and belief, using and/or disclosing documents and/or information contained on the ENGINEERING DRIVE to others without Plaintiff TIVOLI's consent (b) soliciting and/or supplying Plaintiff's vendors and customers with products and services with respect to Plaintiff's electrical lighting products in an attempt to steal business opportunities away from Plaintiff utilizing the documents and/or information contained on the ENGINEERING DRIVE; and (c) by refusing to return the trade secrets to Plaintiff TIVOLI and continuing to exercise dominion over them without authorization

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

from Plaintiff, and despite duties to return them as provided under contract and California law.

98.    Defendants knew or should have known that the trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and that the trade secrets were covered by, at least, the SMITH Agreements and the TIVOLI PURCHASE AGREEMENT.

99.    Defendants' misappropriation of Plaintiff TIVOLI's ENGINEERING DRIVE and the document and information thereon which constitute Plaintiff's trade secrets, including actual and threatened use and disclosure, and solicitation and/or supply of Plaintiff's customers, is a wrongful act in violation of California Civil Code Section 3426.

100.   Defendants' actions have resulted in damage to Plaintiff TIVOLI in an amount to be proven at trial.

101.   As a result of Defendants' conduct, Plaintiffs already have suffered immediate and irreparable harm, and will continue to suffer irreparable harm until this Court enjoins their actions.

102.   In misappropriating Plaintiff's trade secrets as described herein, Defendants acted with a conscious disregard for Plaintiff's rights, and are guilty of oppression, fraud, and malice as those terms are defined in California Civil Code § 3294.   Accordingly, Plaintiff is entitled to recover exemplary and punitive damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH

## PROSPECTIVE ECONOMIC ADVANTAGE

## AGAINST ALL DEFENDANTS

103.   Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 102, inclusive, and incorporates them by reference herein.

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

104.   An economic relationship existed between Plaintiff TIVOLI several prospective clients including Wynn Resorts and Baha Mar, which contained the probability of substantial future economic benefits to Plaintiff.

105.   Plaintiff TIVOLI is informed, believes, and on that basis alleges, by virtue of its relationship with those customers identified hereinabove, including Baha Mar and Wynn Resorts, Defendants, and each of them, knew or should have known that their conduct to steal these customers using Plaintiff TIVOLI's own property, products, and technologies would deprive Plaintiff TIVOLI of substantial amounts of monies.

106.   Plaintiff TIVOLI is informed, believes, and on that basis alleges, that Defendants intentionally engaged in unlawful conduct, as hereinabove alleged, which was designed to not only disrupt Plaintiff's potential benefit from its relationship with the aforementioned customer and other prospective clients, but to actually steal such business away from Plaintiff.

107.   As a legal result of Defendants' unlawful conduct, Plaintiff TIVOLI has suffered substantial economic damage in an amount subject to proof at trial.

108.   The unlawful conduct demonstrates that Defendants acted oppressively and with malice within the meaning of Cal. Civ. Code § 3294, entitling Plaintiff to punitive or exemplary damages in an amount sufficient to punish Defendants and to make an example of each to the community such that they will not engaged in such conduct in the future.

## SEVENTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTIES
## AGAINST DEFENDANT BIRMINGHAM

109.   Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 108, inclusive, and incorporates them by reference herein.

110.   Pursuant to California Corporations Code Section 16404, as incorporated into the Beverly-Killea Limited Liability Company Act under California Corporations Code Section 17153 and well established case law, Defendant BIRMINGHAM, as Chief

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

Executive Officer of TIVOLI owed fiduciary duties, including a duty of loyalty and a duty of care to Plaintiff.  Included within the duty of loyalty is a duty to refrain from self-dealing and a duty not to compete with Plaintiff.

111.   Defendant BIRMINGHAM' breach of her respective fiduciary duties have caused great harm and damage to Plaintiff as Defendant BIRMINGHAM: (1) usurped corporate opportunities, and (2) brokered those corporate opportunities to and in favor of  co-Defendants.  Specifically, during her tenure as CEO, Defendant BIRMINGHAM engaged in acts to steal customers away from Plaintiff and to divert such customers to her co-Defendants as specifically alleged hereinabove.

112.   Furthermore, prior to her termination, Defendant BIRMINGHAM destroyed emails from *mariep@tivoliusa.com* and/or diverted work emails to her personal email account at *birms@att.net* and removed company property containing proprietary documents and information.  Such property included expense reports documents, the SIM cards from her company-owned iPad and iPhone allowing for the transfer of TIVOLI proprietary information to outside mobile devices, the proprietary specifications sheets for TIVOLI products, and copies of customer quotes containing competitive information which, upon information and belief, have already been used to the detriment of TIVOLI as alleged herein.

113.   Plaintiff TIVOLI is entitled to damages according to proof, pre-judgment interest, an order that Defendant BIRMINGHAM be ordered to return any and all TIVOLI property to TIVOLI, cease use of TIVOLI proprietary information, costs of suit, and such further relief as the Court may deem appropriate.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF CORPORATE OPPORTUNITY DOCTRINE

## AGAINST DEFENDANT BIRMINGHAM

114.   Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 113, inclusive, and incorporates them by reference herein.

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

115. At all times referred to herein, Defendant BIRMINGHAM had a fiduciary relationship to Plaintiff TIVOLI and owed Plaintiff the highest duty of good faith and fair dealing.

116. With knowledge that the viability and success of Plaintiff TIVOLI is greatly dependent on obtaining and maintaining the CUSTOMER PROJECTS, Defendant BIRMINGHAM violated her fiduciary duties by conspiring with her co-Defendants to direct the CUSTOMER PROJECTS to co-Defendants TARGETTI SANKEY, TARGETTI POULSEN, DURALAMP and/or HANGZHOU, away from Plaintiff who had invested substantial time and financial resources in developing products for these customers. These actions by Defendant BIRMINGHAM amount to usurping of Plaintiff's corporate opportunity concerning the CUSTOMER PROJECTS and fulfill the primary purpose for which Plaintiff was formed. Defendant BIRMINGHAM' actions defeated Plaintiff's corporate plans to develop and carry on a legitimate business for which it was created.

117. It is Defendant BIRMINGHAM' burden not only to prove the good faith of the transaction described hereinabove, but also to show its inherent fairness from the viewpoint of Plaintiff TIVOLI. She cannot. As a fiduciary to Plaintiff, Defendant BIRMINGHAM was prohibited from engaging in acts to steal customers such as Baha Mar and Wynn Resorts in opposition to Plaintiff TIVOLI, which Plaintiff had an interest or a tangible expectancy which was essential to its existence. Moreover, Defendant BIRMINGHAM was prohibited from engaging in acts to steal information and technology developed by Plaintiff which Plaintiff intended to and does use in the solicitation of business and fulfillment of customer orders.

118. Defendant BIRMINGHAM's actions in usurping a corporate opportunity were willful, wanton, and malicious and were designed to unjustly enrich herself at the expense of Plaintiff TIVOLI thereby entitling Plaintiff to an award of general, special, and punitive damages against Defendant BIRMINGHAM according to proof at trial.

/ / /

### NINTH CAUSE OF ACTION

### BREACH OF WRITTEN CONTRACT

### AGAINST DEFENDANT SMITH

119.   Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 118, inclusive, and incorporates them by reference herein.

120.   Plaintiff TIVOLI has performed and fully executed all conditions, covenants, and promises required to be performed on its part in accordance with the terms and conditions of the SMITH Agreements, except that, as to any conditions not performed by Plaintiff, such nonperformance has been waived or otherwise excused.

121.   As alleged hereinabove, by engaging in the acts alleged hereinabove, Defendant SMITH has failed to perform pursuant the SMITH Agreements and/or willfully disobeyed his obligations thereunder and, thus, is in breach of said SMITH Agreements.

122.   By engaging in the acts alleged hereinabove, Defendant SMITH has violated the EMPLOYMENT AGREEMENT as during his employment with TIVOLI, Defendant SMITH, on information and belief did: (1) accept employment from DURALAMP, and (2) did engage in activity that was competitive with TIVOLI which did create a conflict of interest.  Further, Defendant SMITH did violate the EMPLOYMENT AGREEMENT by: (1) directly or indirectly diverting business from TIVOLI for the benefit of his co-Defendants; (2) disclosing confidential or proprietary information or using such information or his position with TIVOLI for personal or financial gain; and (3) personally taking advantage of business opportunities that might be of interest to TIVOLI.

123.   By engaging in the acts alleged hereinabove, Defendant SMITH is in breach of the CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT by violating Section 3 in: (1) failing to hold in trust, keep confidential, and not, directly or indirectly, disclose to any third party or make any use or cause to permit the exploitation, copying or summarizing of any Confidential information or Inventions of TIVOLI, or customers except for the benefit of TIVOLI, or customers and in the course

Myers Berstein LLP
2 Executive Circle, Suite 205
Irvine, California 92614

of employment with TIVOLI; (2) causing the unauthorized transmission, removal, or transport of confidential/proprietary information from TIVOLI's principal place of business, from TIVOLI's equipment/personal property (i.e., computers - desktops/laptops), or from Executive's equipment whether used onsite or offsite to electronically access TIVOLI, or customers' confidential information; and (3) failing to maintain and preserve all of the confidential information and knowledge thereof as unavailable to TIVOLI's competitors, the industry, and the general public in order to protect TIVOLI's business, competitive position, and goodwill, since TIVOLI derives a competitive advantage in the marketplace by maintaining the confidential information and knowledge thereof as secret and unavailable to TIVOLI's competitors and the public.

124.    By engaging in the acts alleged hereinabove, Defendant SMITH is in breach of the CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT by violating Section 4 in engaging in activities other than for TIVOLI in any business in which Company is engaged or contemplates engaging during his employment with TIVOLI.

125.    By engaging in the acts alleged hereinabove, Defendant SMITH is in breach of the CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT by violating Section 5.1 in engaging in competition with TIVOLI after his resignation with TIVOLI, while making use of TIVOLI's confidential information or matter relating to TIVOLI's business that he acquired by reason of his employment with TIVOLI.

126.    By engaging in the acts alleged hereinabove, Defendant SMITH is in breach of the CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT by violating Section 5.2 in acting to solicit, call on, take away or attempt to solicit, call on, or take away TIVOLI's customers existing at the time Defendant SMITH's employment commenced and/or with whom he became acquainted as a result of his employment with TIVOLI, which Defendant SMITH acknowledged and agreed constituted confidential information and provided to Defendant SMITH in confidence.

127. By engaging in the acts alleged hereinabove, Defendant SMITH is in breach of the CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT by violating Section 12 in failing to promptly and without request, to deliver to and inform TIVOLI of all documents and data, including the TIVOLI ENGINEERING DRIVE, pertaining to his employment and confidential information of TIVOLI and/or its customers whether prepared by Defendant SMITH or otherwise coming into his possession or control.

128. By engaging in the acts alleged hereinabove, Defendant SMITH is in breach of the INVENTION ASSIGNMENT AGREEMENT by violating Section 2.2 in: (1) failing to abide by all TIVOLI rules and procedures designed to protect TIVOLI's proprietary information; (2) failing to preserve and maintain all such proprietary information in strict confidence during his employment by TIVOLI and as long thereafter as such information is confidential or proprietary to TIVOLI; and (3) acting to use, disclose, or in any other way use or disseminate such information in an unauthorized manner.

129. By engaging in the acts alleged hereinabove, Defendant SMITH is in breach of the INVENTION ASSIGNMENT AGREEMENT by violating Section 3.3 in: (1) failing to return to TIVOLI all copies of documents or information containing TIVOLI's trade secrets, inventions, confidential information, copyrights and all other confidential or proprietary work in his possession or control or generated within the scope of employment; (2) acting to deliver, reproduce, or in any way allow TIVOLI's trade secrets, inventions, confidential information, copyrights and all other confidential or proprietary work to be delivered or used by any third parties, including his co-Defendants, without authorization; and (3) acting to publish, release, or otherwise make available to third parties, including his co-Defendants, information describing TIVOLI's inventions, confidential information, copyrighted materials or trade secrets without authorization.

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

130.   By engaging in the acts alleged hereinabove, Defendant SMITH is in breach of the SECRECY AGREEMENT by violating Section 1 in: (1) disclosing TIVOLI's trade secrets, formulas, patterns, devices, secret inventions, processes and compilation of information, records and specifications; and (2) removing from TIVOLI files, records, documents, drawings, specification, equipment, and similar items relating to the business of the TIVOLI.

131.   As a legal result of Defendant SMITH's breaches of the SMITH Agreements, Plaintiff TIVOLI is entitled to recover from Defendant the damages it has sustained, and will sustain, as a result of Defendant's wrongful acts as hereinabove alleged, trebled damages, attorney's fees, and interest thereupon.  The amount of such damages is unknown at this time and subject to proof at the time of trial.  Plaintiff is further entitled to recover from Defendant his unjust enrichment including gains, profits, and advantages he has obtained as a result of his wrongful acts as hereinabove alleged. Presently, Plaintiff is unable to ascertain the full extent of the Defendant's unjust enrichment including gains, profits, and advantages obtained by reason of their aforesaid breach.

132.   The wrongful acts of Defendant SMITH as alleged herein, unless restrained and enjoined by order of this Court, will cause great and irreparable injury to the general public and to Plaintiff TIVOLI.  Plaintiff has no adequate remedy at law for the injuries that have been or will continue to be sustained.

## TENTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF

### GOOD FAITH AND FAIR DEALING

### AGAINST DEFENDANT SMITH

133.   Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 132, inclusive, and incorporates them by reference herein.

134.  The SMITH Agreements entered into are enforceable agreements that, as a matter of law, contain an implied covenant of good faith and fair dealing, to the effect

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

that no party would engage in any conduct designed to deprive the other party of their benefits under the Agreements.

135.  Plaintiff TIVOLI has performed all conditions, covenants, and promises required to be performed on its part in accordance with the terms and conditions of the Agreement, except that, as to any conditions not performed by Plaintiff, such nonperformance has been waived or otherwise excused.

136.  As a result of the unlawful actions of Defendant SMITH as set forth hereinabove, Defendant has violated the implied covenant of good faith and fair dealing presumed in the SMITH Agreements and, as a result thereof, Plaintiff TIVOLI is entitled to damages as prayed.

137.  As a direct and legal result of the unlawful conduct by Defendant SMITH, Plaintiff TIVOLI has suffered and continues to suffer actual damages in an amount to be determined in accordance with proof at the time of trial.

## <u>ELEVENTH CAUSE OF ACTION</u>
### BREACH OF WRITTEN CONTRACT
### AGAINST DEFENDANT TARGETTI POULSEN

138.  Plaintiffs NEO-NEON and AMERICAN LIGHTING reallege each and every allegation set forth in Paragraphs 1 through 137, inclusive, and incorporate them by reference herein.

139.  Plaintiffs NEO-NEON and AMERICAN LIGHTING have performed and fully executed all conditions, covenants, and promises required to be performed on their part in accordance with the terms and conditions of the TIVOLI PURCHASE AGREEMENT, except that, as to any conditions not performed by Plaintiffs, such nonperformance has been waived or otherwise excused.

140.  By utilizing the TIVOLI INTELLECTUAL PROPERTY without authorization Defendant TARGETTI POULSEN, by and through its own actions and/or the actions of its agents, subsidiaries and/or affiliates, has deprived Plaintiffs NEO-NEON and AMERICAN LIGHTING of the consideration bargained for and their rights, title, and

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

interest in the TIVOLI INTELLECTUAL PROPERTY.  Thus, Defendant TARGETTI POULSEN is in breach of Section 1.1 of the TIVOLI PURCHASE AGREEMENT which provides:

> Effective as of the date hereof, the Seller does hereby sell, transfer, convey, assign and set over (the "Sale") to the Purchasers, and the Purchasers do hereby purchase and acquire from the Seller, all of the Seller's right, title and interest in and to the Seller's LLC Interests.

141.  By infringing the TIVOLI® trademark as alleged herein, Defendant TARGETTI POULSEN, by and through its own actions and/or the actions of its agents, subsidiaries and/or affiliates, is in breach of Section 6.2 of the TIVOLI PURCHASE AGREEMENT which provides that "[t]he Purchasers shall have the rights to use the "Tivoli" trade name."

142.  Pursuant to Section 6.4 of the TIVOLI PURCHASE AGREEMENT, the parties entered in COVENANT OF NON-SOLICITATION which provides:

> Targetti, on behalf of itself, and its shareholders, officers, directors, employees, agents, and representatives, agrees that for a period of three (3) years following execution of this Agreement, it shall not, acting personally or by or through any officers, directors, shareholders, agents, employees, corporations, companies or other entities, solicit any person who is at the time employed by the Company to leave the employ of the Company or to become employed by any person, firm, corporation or other entity engaged in competition with the Company.

143.  By the solicitation and hiring of co-Defendant SMITH, Defendant TARGETTI POULSEN, by and through its own actions and/or the actions of its agents, subsidiaries and/or affiliates, is in violation of the COVENANT OF NON-SOLICITATION that is incorporated into the TIVOLI PURCHASE AGREEMENT.

144.  As alleged hereinabove, by engaging in the acts alleged herein, Defendant TARGETTI POULSEN has failed to perform pursuant the TIVOLI PURCHASE AGREEMENT and/or willfully disobeyed its obligations thereunder and, thus, is in breach of the TIVOLI PURCHASE AGREEMENT.

145.   As a legal result of Defendant TARGETTI POULSEN's breaches, Plaintiffs NEO-NEON and AMERICAN LIGHTING are entitled to recover from Defendant the damages they have sustained, and will sustain, as a result of Defendant's wrongful acts as hereinabove alleged, attorney's fees, and interest thereupon.   The amount of such damages is unknown at this time and subject to proof at the time of trial.   Plaintiffs NEO-NEON and AMERICAN LIGHTING are further entitled to recover from Defendant its unjust enrichment including gains, profits, and advantages it has obtained as a result of its wrongful acts as hereinabove alleged.   Presently, Plaintiffs NEO-NEON and AMERICAN LIGHTING are unable to ascertain the full extent of the Defendant's unjust enrichment including gains, profits, and advantages obtained by reason of its aforesaid breach.

146.   The wrongful acts of Defendant as alleged herein, unless restrained and enjoined by order of this Court, will cause great and irreparable injury to the general public and to Plaintiffs NEO-NEON and AMERICAN LIGHTING.   Plaintiffs NEO-NEON and AMERICAN LIGHTING have no adequate remedy at law for the injuries that have been or will continue to be sustained.

**TWELFTH CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF**

**GOOD FAITH AND FAIR DEALING**

**AGAINST DEFENDANT TARGETTI POULSEN**

147.   Plaintiffs NEO-NEON and AMERICAN LIGHTING reallege each and every allegation set forth in Paragraphs 1 through 146, inclusive, and incorporate them by reference herein.

148.   The TIVOLI PURCHASE AGREEMENT entered into by and between Plaintiffs NEO-NEON and AMERICAN LIGHTING and TARGETTI POULSEN is an enforceable agreement that, as a matter of law, contain an implied covenant of good faith and fair dealing, to the effect that no party would engage in any conduct designed to deprive the other parties of their benefits under the Agreement.

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

149. Plaintiffs NEO-NEON and AMERICAN LIGHTING have performed all conditions, covenants, and promises required to be performed on their part in accordance with the terms and conditions of the Agreement, except that, as to any conditions not performed by Plaintiffs NEO-NEON and AMERICAN LIGHTING, such nonperformance has been waived or otherwise excused.

150. As a result of the unlawful actions of Defendant TARGETTI POULSEN as set forth hereinabove, Defendant has violated the implied covenant of good faith and fair dealing presumed in the TIVOLI PURCHASE AGREEMENT and, as a result thereof, Plaintiffs NEO-NEON and AMERICAN LIGHTING are entitled to damages as prayed.

151. As a direct and legal result of the unlawful conduct by Defendant, Plaintiffs NEO-NEON and AMERICAN LIGHTING have suffered and continues to suffer actual damages in an amount to be determined in accordance with proof at the time of trial.

### THIRTEEN CAUSE OF ACTION

### CONVERSION

### AGAINST ALL DEFENDANTS

152. Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 151, inclusive, and incorporates them by reference herein.

153. As alleged herein, Defendants unlawfully converted for their own personal use, including the solicitation of existing and prospective customers of Plaintiff TIVOLI, the TIVOLI ENGINEERING DRIVE, TIVOLI TOOLING, and TIVOLI SPECIFICATION SHEETS belonging to Plaintiffs.

154. Defendants are not entitled to retain any interest in the TIVOLI ENGINEERING DRIVE, TIVOLI TOOLING, and TIVOLI SPECIFICATION SHEETS.

155. As a legal result of Defendants' conversion of the TIVOLI ENGINEERING DRIVE, TIVOLI TOOLING, and TIVOLI SPECIFICATION SHEETS, Plaintiff TIVOLI has suffered, and continues to suffer, damages as here alleged.

156. At the time Defendants converted the TIVOLI ENGINEERING DRIVE, TIVOLI TOOLING, and TIVOLI SPECIFICATION SHEETS, Defendants were guilty of

malice, oppression, and a willful and conscious disregard for the rights of Plaintiff TIVOLI entitling Plaintiff to punitive and exemplary damages from Defendants.

## FOURTEENTH CAUSE OF ACTION

### CONVERSION

### AGAINST DEFENDANT BIRMINGHAM AND DOES 1-20

157.   Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 156, inclusive, and incorporates them by reference herein.

158.   As described hereinabove, Defendant BIRMINGHAM unlawfully converted for her own personal use the: (1) TIVOLI SPECIFICATION SHEETS, (2) TIVOLI's customer quotations and other documents and things concerning the CUSTOMER PROJECTS including those for the Baha Mar and Wynn Resorts projects; (3) expense report documents, and (4) the SIM cards from her TIVOLI-owned iPad and iPhone.

159.   Defendant BIRMINGHAM is not entitled to retain any interest in the aforementioned property belonging to Plaintiff TIVOLI.

160.   As a legal result of Defendant BIRMINGHAM's conversion of Plaintiff TIVOLI's property, Plaintiff has suffered, and continues to suffer, damages as herein alleged.

161.   At the time Defendant BIRMINGHAM converted Plaintiff TIVOLI's property, Defendant was guilty of malice, oppression, and a willful and conscious disregard for the rights of Plaintiff TIVOLI entitling Plaintiff to punitive and exemplary damages from Defendant BIRMINGHAM.

## FIFTEENTH CAUSE OF ACTION

### CONVERSION

### AGAINST DEFENDANT SMITH AND DOES 1-20

162.   Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 161, inclusive, and incorporates them by reference herein.

163.   As described hereinabove, Defendant SMITH unlawfully converted for his own personal use the: (1) TIVOLI ENGINEERING DRIVE; (2) TIVOLI SPECIFICATION

SHEETS; and (3) TIVOLI's customer quotations and other documents and things concerning the CUSTOMER PROJECTS including those for the Baha Mar and Wynn Resorts projects.

164. Defendant SMITH is not entitled to retain any interest in the: (1) TIVOLI ENGINEERING DRIVE; (2) TIVOLI SPECIFICATION SHEETS; and (3) TIVOLI's customer quotations and other documents and things concerning the CUSTOMER PROJECTS including those for the Baha Mar and Wynn Resorts projects.

165. As a legal result of Defendant SMITH's conversion of Plaintiff TIVOLI's property, Plaintiff has suffered, and continues to suffer, damages as herein alleged.

166. As a result of Defendant SMITH's actions, Plaintiff TIVOLI has suffered immediate and irreparable harm, and will continue to suffer irreparable harm until this Court enjoins Defendant SMITH's actions.

167. The aforementioned unlawful conduct demonstrates that Defendant SMITH acted oppressively and with malice within the meaning of Cal. Civ. Code § 3294, entitling Plaintiff to punitive or exemplary damages in an amount sufficient to punish Defendant SMITH and to make an example of him to the community such that he will not engaged in such conduct in the future.

## SIXTEENTH CAUSE OF ACTION

### CIVIL CONSPIRACY

### AGAINST ALL DEFENDANTS

168. Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 167, inclusive, and incorporates them by reference herein.

169. At least as early as February 2014, Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to engage in the acts herein alleged to steal and interfere with TIVOLI's relationships with customers and, in particular, to utilize TIVOLI's trade secrets and proprietary information found on the misappropriated ENGINEERING DRIVE, including product specifications,

Myers Berstein LLP
2 Executive Circle, Suite 205
Irvine, California 92614

1  manufacturing capabilities, and customer quotations to underbid and/or otherwise take-
2  away the CUSTOMER PROJECTS from Plaintiff TIVOLI.

3  170.   Defendants BIRMINGHAM and SMITH engaged in the acts and things herein
4  alleged pursuant to, and furtherance of, the conspiracy and above-alleged agreement.

5  171.   Defendants   TARGETTI,   TARGETTI   POULSEN,   DURALAMP   and
6  HANGZHOU  furthered  the  conspiracy  by  cooperation  with,  lent  aid  and
7  encouragement to, ratified and/or adopted the acts of Defendants BIRMINGHAM and
8  SMITH which commenced prior to the termination of their respective employment with
9  TIVOLI  and  continues  to  this  day  as  agents  and/or  employees  of  Defendant
10 DURALAMP as herein alleged.

11 172.   Defendants' on-going conspiracy has resulted in damage to Plaintiff TIVOLI in
12 an amount to be proven at trial.

13 173.   As a result of Defendants' on-going conspiracy, Plaintiff TIVOLI has suffered
14 immediate and irreparable harm, and will continue to suffer irreparable harm until this
15 Court enjoins Defendants' actions.

16 174.   The aforementioned unlawful conduct demonstrates that Defendants acted
17 oppressively and with malice within the meaning of Cal. Civ. Code § 3294, entitling
18 Plaintiff to punitive or exemplary damages in an amount sufficient to punish
19 Defendants and to make an example of each to the community such that they will not
20 engaged in such conduct in the future.

**SEVENTEENTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**AGAINST ALL DEFENDANTS**

24 175.   Plaintiffs reallege each and every allegation set forth in Paragraphs 1 through
25 174, inclusive, and incorporate them by reference herein.

26 176.   The unlawful conduct of Defendants, and each of them, as alleged hereinabove
27 has secured, and will secure, value to Defendants which unjustly enriches Defendants to

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

the detriment of Plaintiffs.  By their Complaint, Plaintiffs request the disgorgement of all value unjustly earned or retained by Defendants.

177.   As a legal result of their unlawful conduct, Defendants have been unjustly enriched and, at the same time, are causing a loss of revenue to Plaintiffs to their detriment.

178.   Plaintiffs are entitled to recover from Defendants, and each of them, their unjust enrichment including gains, profits, and advantages they have obtained as a result of their wrongful acts as hereinabove alleged. Plaintiffs are at present unable to ascertain the full extent of Defendants' unjust enrichment including gains, profits, and advantages obtained by reason of the aforesaid wrongful conduct.

**EIGHTEENTH CAUSE OF ACTION**

**FALSE ADVERTISING IN VIOLATION OF**

**CALIFORNIA BUSINESS & PROFESSIONS CODE §17500, *ET SEQ*.**

**AGAINST ALL DEFENDANTS**

179.   Plaintiff TIVOLI realleges each and every allegation set forth in Paragraphs 1 through 178, inclusive, and incorporates them by reference herein.

180.   The actions of Defendants herein alleged are unfair and unlawful, and also violate California Business and Professions Code §§17500, *et seq*.

181.   As a result of the Defendants' false and misleading advertising, potential and actual consumers have been, and will continue to be, misled about the source and legitimacy of the goods being wrongfully marketed, advertised, and sold bearing the TIVOLI TRADEMARKS in which Plaintiff TIVOLI has established common law rights.  Defendants knew that the advertising was untrue and misleading and willfully continue to advertise and sell such goods to consumers.

182.   As a result of the above-described conduct, Defendants have been, and will continue to be, unjustly enriched in profits, income, and ill-gotten gains at the expense of Plaintiff TIVOLI and consumers in California and the United States.

183.   As a further result of the above-described conduct, Plaintiff TIVOLI has been,

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

and will continue to be, unjustly deprived of the full value of the goodwill associated with Plaintiff's TIVOLI TRADEMARKS in which Plaintiff has established common law rights. The wrongful acts of Defendants, as alleged herein, unless restrained and enjoined by order of this Court, will cause great and irreparable injury to the general public and to Plaintiff TIVOLI, its business, its reputation, and its goodwill.  Plaintiff has no adequate remedy at law for the injuries that have been or will continue to be sustained in this action.

**NINETEENTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA**

**BUSINESS & PROFESSIONS CODE §§ 17200, *ET SEQ*.**

**AGAINST ALL DEFENDANTS**

184.   Plaintiffs realleges each and every allegation set forth in Paragraphs 1 through 183, inclusive, and incorporate them by reference herein.

185.   Defendants as alleged herein have committed acts of unfair competition, as defined by California Business and Professions Code § 17200, *et seq*.  The acts and business practices described herein constituted and constitute a common course of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of the Unfair Competition Laws ("UCL"), as well as the common law of the State of California, including, but in no way limited to, the following:

Unlawful:  Defendants' acts and business practices as described above are unlawful and fraudulent on numerous grounds including, but not limited to, that they constitute (1) the infringement of Plaintiff TIVOLI's copyright and trademark rights; (2) the misappropriation and conversion of Plaintiff TIVOLI's trade secrets and property including the TIVOLI ENGINEERING DRIVE, TIVOLI TOOLING, and TIVOLI SPECIFICATION SHEETS to gain an unfair competitive advantage with regard to the CUSTOMER PROJECTS; and (3) the formation of an unlawful civil

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

conspiracy to interfere with TIVOLI's relationships with customers and, in particular, to utilize TIVOLI's proprietary information to steal the CUSTOMER PROJECTS.

Unfair: Defendants' acts and business practices as described above are unfair since they violate California's public policy against unjustly enriching one party at the expense of another. Plaintiffs' injuries resulting from the above-described conduct, in particular the misappropriation and use of the TIVOLI ENGINEERING DRIVE, TIVOLI TOOLING, and TIVOLI SPECIFICATION SHEETS to steal the CUSTOMER PROJECTS, is substantial; the injury is not outweighed by any offsetting consumer or competitive benefits of that practice. As set forth above, even if the conduct were not specifically unlawful, it violates the spirit or policy of the law as it has been established by statute, common law, and industry practice or otherwise.

186. Plaintiffs are entitled to restitution of any monies obtained by Defendants as a direct and legal result of the violations of the UCL and common law.

187. The wrongful acts of Defendants as alleged herein, unless restrained and enjoined by order of this Court, will cause great and irreparable injury to the general public and to Plaintiffs. Plaintiffs have no adequate remedy at law for the injuries that have been or will continue to be sustained.

188. Plaintiffs have incurred, and will continue to incur, litigation expenses, as well as court costs, as a direct, proximate, and legal result of Defendants' wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor and against Defendants as follows:

## ON THE FIRST CAUSE OF ACTION
### (Copyright Infringement)

1. That Defendants each be held to have infringed Plaintiff TIVOLI's copyright in the Copyrighted Works;

2. That Defendants, their directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them,

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

be enjoined from directly or indirectly infringing Plaintiff's copyrights in the Copyrighted Works;

3.    That Defendants, their directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined to return to Plaintiff any originals, copies, facsimiles, reproductions or duplicates of the Copyrighted Works in their possession, custody, or control;

4.    That Defendants each be enjoined to deliver upon oath, to be impounded during the pendency of this action, and for destruction pursuant to judgment herein, all originals, copies, facsimiles, reproductions or duplicates of any work shown by the evidence to infringe any of Plaintiff's copyrights;

5.    That Defendants each be required to file with the Court and to serve on Plaintiff, within 30 days after service of the Court's order as herein prayed, a report in writing under oath setting forth in detail the manner and form in which Defendants each complied with the Court's order;

6.    That judgment be entered for Plaintiff TIVOLI and against Defendants, for Plaintiff's actual damages according to proof, and for any additional profits attributable to infringements of Plaintiff's copyright, in accordance with proof;

7.    That judgment be entered for Plaintiff and against Defendants, for damages based upon Defendants' willful acts of infringement, pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et. seq.*;

8.    That Defendants each be required to account for all gains, profits, and advantages derived from their acts of infringement and for their other violations of law;

9.  That all gains, profits, and advantages derived by Defendants of their acts of infringement and other violations of law be deemed to be in constructive trust for the benefit of Plaintiff;

10. That Plaintiff be awarded prejudgment interest at the legal rate pursuant to California Civil Code § 3336;

11. That Plaintiff be awarded exemplary/punitive damages;

12. That Plaintiff be awarded attorneys' fees and costs of suit; and

13. Such other and further relief at law or in equity, to which the Court deems just and proper.

**ON THE SECOND, THIRD, AND FOURTH CAUSES OF ACTION**

**(Trademark Infringement)**

14. That Plaintiff's TIVOLI TRADEMARKS have been infringed by Defendants' acts under 15 U.S.C. §§ 1114 and 1125;

15. That Defendants, and each of them, have unfairly competed with Plaintiff in violation of 15 U.S.C. § 1125 and California Business and Professions Code §§ 17200, *et seq*.;

16. That Plaintiff is entitled to recover damages from Defendants, and each of them, for their acts of federal trademark infringement, dilution, and unfair competition, and that these damages be trebled under 15 U.S.C. § 1117(b) because Defendants' acts have been willful, and that Plaintiff be awarded its reasonable attorneys' fees;

17. That Plaintiff is entitled to recover damages from Defendants, and each of them, for Defendants' acts of unfair competition and unjust enrichment, and that Plaintiff further recover punitive damages under California law because Defendants' acts have been willful, fraudulent, oppressive, and/or malicious;

18. That Defendants, and each of them, their officers, shareholders, directors, agents, servants, employees, attorneys, parent companies, confederates,

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

and all persons in active concert or participation with them now and in the future, be enjoined from:

a.  Using any combination, reproduction, counterfeit, copy, or colorable imitation of the TIVOLI TRADEMARKS in connection with the advertising, distribution, offering for sale, or sale of electric lighting products, the same or similar to those offered by Plaintiff, or likely to be confused with those of Plaintiff, or likely to injure Plaintiff's business, reputation or the reputation of the TIVOLI TRADEMARKS;

b.  Using any combination, reproduction, counterfeit, copy or colorable imitation of the TIVOLI TRADEMARKS in any manner likely to cause confusion, to cause mistake, or to deceive the public;

c.  Selling, offering to sell, advertising, promoting, or passing off, inducing, or enabling others to sell, offer to sell, advertise, promote, or pass off any electric lighting product similar to those provided by Plaintiff under a name or mark the same as or similar to Plaintiff's TIVOLI TRADEMARKS;

d.  Committing any acts calculated to cause customers or consumers to believe that Defendants' products are approved, licensed, sponsored by, or endorsed by Plaintiff;  and

e.  Otherwise competing unfairly with Plaintiff in any manner, including, but not limited to, infringing usage of Plaintiff's TIVOLI TRADEMARKS, or any confusingly similar marks.

19. That Defendants, and each of them, be required to deliver up to Plaintiff for destruction, any and all materials which infringe Plaintiff TIVOLI TRADEMARKS in Defendants' possession or under their control;

20. That Defendants be required to deliver up to Plaintiff for destruction, any

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

and all catalogs, circulars and other printed material in Defendants' possession or under its control displaying or exploiting Plaintiff's TIVOLI TRADEMARKS;

21. That Defendants be required to supply Plaintiff with a complete list of entities or individuals to whom they have offered for sale electric lighting products bearing the Plaintiff's TIVOLI TRADEMARKS, or any confusingly similar marks, and be required to contact such entities, inform them that such goods are no longer for sale and may no longer be offered for sale, and providing them with the means of blacking-out the offerings of the such goods in their advertising materials;

22. That Defendants be ordered pursuant to 15 U.S.C. § 1116(a) to file, with the Court and serve upon Plaintiff, within thirty (30) days of the entry of injunction prayed for herein, a written report, under oath or affirmed under penalty of perjury, setting forth in detail the form and manner in which it has complied with the ordered permanent injunction; and

23. Such other and further relief at law or in equity, to which the Court deems just and proper.

## ON THE FIFTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets)

24. For general, special, and consequential damages in an amount to be proven at the time of trial;

25. For a preliminary and permanent injunction;

26. For punitive and exemplary damages in an amount sufficient to punish and make an example of Defendants;

27. For legal interest;

28. For costs of suit incurred herein;

29. For reasonable attorneys' fees; and

30. Such other and further relief at law or in equity, to which the Court deems

Myers Berstein LLP
2 Executive Circle, Suite 205
Irvine, California 92614

just and proper.

## ON THE SIXTH CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Advantage)

31. For general, special, and consequential damages in an amount to be proven at the time of trial;

32. For a preliminary and permanent injunction;

33. For punitive and exemplary damages in an amount sufficient to punish and make an example of Defendants;

34. For legal interest;

35. For costs of suit incurred herein;

36. For reasonable attorneys' fees; and

37. Such other and further relief at law or in equity, to which the Court deems just and proper.

## ON THE SEVENTH CAUSE OF ACTION

### (Breach of Fiduciary Duties)

38. For damages in an amount according to proof at the time of trial;

39. For interest on the sum of damages awarded;

40. For costs of suit incurred herein; and

41. Such other and further relief at law or in equity, to which the Court deems just and proper.

## ON THE EIGHTH CAUSE OF ACTION

### (Violation of the Corporate Opportunity Doctrine)

42. For damages in an amount according to proof at the time of trial;

43. For interest on the sum of damages awarded;

44. For exemplary and punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

45. For costs of suit incurred herein; and

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

46. Such other and further relief at law or in equity, to which the Court deems just and proper.

## ON THE NINTH CAUSE OF ACTION

### (Breach of Contract)

47. For damages in an amount according to proof at the time of trial;

48. For interest on the sum of damages awarded;

49. For reasonable attorneys' fees

50. For costs of suit incurred herein; and

51. Such other and further relief at law or in equity, to which the Court deems just and proper.

## ON THE TENTH CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

52. For damages in an amount according to proof at the time of trial;

53. For interest on the sum of damages awarded;

54. For costs of suit incurred herein; and

55. Such other and further relief at law or in equity, to which the Court deems just and proper.

## ON THE ELEVENTH CAUSE OF ACTION

### (Breach of Contract)

56. For damages in an amount according to proof at the time of trial;

57. For interest on the sum of damages awarded;

58. For reasonable attorneys' fees

59. For costs of suit incurred herein; and

60. Such other and further relief at law or in equity, to which the Court deems just and proper.

## ON THE TWELFTH CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

61. For damages in an amount according to proof at the time of trial;

Myers Berstein LLP
2 Executive Circle, Suite 205
Irvine, California 92614

62. For interest on the sum of damages awarded;

63. For costs of suit incurred herein; and

64. Such other and further relief at law or in equity, to which the Court deems just and proper.

## ON THE THIRTEENTH, FOURTEENTH, AND FIFTEENTH CAUSES OF ACTION

### (Conversion)

65. For damages in an amount according to proof at the time of trial;

66. For interest on the sum of damages awarded;

67. For a preliminary and permanent injunction;

68. For costs of suit incurred herein; and

69. Such other and further relief at law or in equity, to which the Court deems just and proper.

## ON THE SIXTEENTH CAUSE OF ACTION

### (Civil Conspiracy)

70. For damages in an amount according to proof at the time of trial;

71. For interest on the sum of damages awarded;

72. For a preliminary and permanent injunction;

73. For costs of suit incurred herein; and

74. Such other and further relief at law or in equity, to which the Court deems just and proper.

## ON THE SEVENTEETH CAUSE OF ACTION

### (Unjust Enrichment)

75. For damages in an amount according to proof at the time of trial;

76. For interest on the sum of damages awarded;

77. For costs of suit incurred herein; and

78. Such other and further relief at law or in equity, to which the Court deems just and proper.

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

## ON THE EIGHTEENTH CAUSE OF ACTION

### (Violation of Cal. Bus. & Prof. Code § 17500)

79.   For an order enjoining Defendants from engaging in acts which are unlawful, fraudulent, unfair, and deceptive within the meaning of California Business & Professions Code § 17500;

80.   For an order that Defendants restore to the general public all funds acquired through their schemes of economic and business duress which are unlawful, fraudulent, unfair, and deceptive within the meaning of California Business & Professions Code § 17500;

81.   For attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure §1021.5;

82.   For an award of compensatory damages according to proof at the time of trial; and

83.   For such other and further relief at law or in equity, which the Court deems just and proper.

## ON THE NINETEENTH CAUSE OF ACTION

### (Unfair Competition in Violation of

### California Business & Professions Code § 17200)

84.   For an order enjoining Defendants from engaging in acts which are unlawful, fraudulent, unfair, and deceptive within the meaning of California Business & Professions Code § 17200;

85.   For an order that Defendants restore to the general public all funds acquired through their infringing activities which are unlawful, fraudulent, unfair, and deceptive within the meaning of California Business & Professions Code § 17200;

86.   Attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure §1021.5;

MYERS BERSTEIN LLP
2 EXECUTIVE CIRCLE, SUITE 205
IRVINE, CALIFORNIA 92614

87. For an award of compensatory damages according to proof at the time of trial; and

88. Such other and further relief at law or in equity, to which the Court deems just and proper.

Dated:  August 12, 2014                    MYERS BERSTEIN LLP

/s/David A. Berstein
David A. Berstein
Nicholas D. Myers
Attorneys for Plaintiffs


## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  August 12, 2014                    MYERS BERSTEIN LLP

/s/David A. Berstein
David A. Berstein
Nicholas D. Myers
Attorneys for Plaintiffs