**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 14-1285-DOC (JCGx) Date: February 3, 2015

Title: TIVOLI LLC, ET AL. V. TARGETTI SANKEY S. P. A., ET AL

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Goltz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS): ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS, MOTION TO STRIKE [17] [18] [19]**

Before the Court is Defendant Targetti Sankey, S.p.A. (Targetti Sankey) and Hangzhou Targetti Lighting Co., Ltd.'s (Hangzhou) Motion to Dismiss Complaint (Dkt. 17); Defendant Targetti Poulsen USA Inc.'s ("Targetti Poulsen" or "Poulsen") Motion to Strike Portions of Complaint (Dkt. 18), and Defendant Targetti Poulsen's Motion to Dismiss Complaint (Dkt. 19). The Court finds these matters suitable for resolution without oral argument. After considering the parties' briefing, the Court hereby DENIES Defendants' Motions.

## I. Background

The following facts are drawn from the Complaint and attached exhibits.

Plaintiffs Tivoli, LLC ("Tivoli"), Neo-Neon LED USA Holdings, Ltd. (Neo-Neon USA), and American Lighting, Inc. (American Lighting), allege that the Defendants stole

proprietary and trade secret information after Targetti sold its shares of Tivoli to American Lighting and Neo-Neon USA.[1] *See generally* Compl. (Dkt. 1).

### A. Intellectual Property

Tivoli is a "market leader" in the field of LED linear lighting, and owns "innovative technology" and related materials. *Id.* ¶ 16-17. Tivoli, consistent with industry standards, prepares and distributes specifications sheets which lay-out technical details about its products. *Id.* ¶ 18. Tivoli has filed applications for numerous Certificates of Registration for its Specification Sheets ("Specification Sheets"). *Id.* ¶ 18-19. Plaintiffs identify fifteen of these "Tivoli Copyrights," which Defendants allegedly misappropriated. *Id.* ¶ 20.Tivoli also owns a set of trademarks, registered with the U.S. Trademark Office, or with applications pending. *Id.* ¶ 24-27. Finally, Tivoli stores sensitive information electronically on a server containing an engineering drive ("Engineering Drive"). The Engineering Drive holds Tivoli trade secret information including: product drawings, specification sheets, manufacturing information, customer and vendor files, industry trade show information, and more. *Id.* ¶ 28-29. This material is referred to collectively as "Tivoli Intellectual Property."

### B. Entities

In January 2004, Targetti Sankey formed Tivoli, LLC, and was the sole member of the new LLC. *Id.* ¶ 32. In early 2004, Neo-Neon, a Chinese lighting company, purchased a fifty percent ownership share in Tivoli. *Id.* ¶ 33. In 2012, Tivoli entered into manufacturing relationships with two subsidiaries of Targetti Sankey, Duralamp and Hangzhou, both manufacturers of electric lighting products. *Id.* ¶ 35-37.

After ten years of owning and managing Tivoli, Targetti Poulsen sold its fifty percent interest in Tivoli to Neo-Neon USA Holdings and American Lighting for $3,000,000.[2] Thereafter, Targetti Sankey and its affiliates allegedly stole Tivoli's intellectual property and "key personnel" to compete with Tivoli and "target Tivoli's largest and most lucrative clients and/or prospective clients." *Id.* ¶ 39.

---

[1]Targetti Sankey is the parent company of Defendants Targetti Poulsen, Hangzhou, and Duralamp. Although the complaint lists "Targetti Sankey" and "Neo-Neon" as parties to the Purchase Agreement (Compl. ¶ 15, Ex. A.) The agreement itself is signed by Targetti Poulsen USA Inc. and Neo-Neon LED USA Holdings Ltd. (Neo-Neon USA), a separate company from non-party Neo-Neon Holdings, Ltd. (Neo-Neon Holdings).

[2] There is some lack of clarity as to whether Targetti Poulsen owned Tivoli from its inception, or acquired its management interest at a later date.

### C. Wrongful Conduct

Plaintiffs allege, on information and belief, that after Targetti sold its ownership interest in Tivoli, Defendants stole Tivoli's technology and confidential and proprietary information, and are now unlawfully soliciting projects from existing customers. Compl. ¶ 41. Specifically, Plaintiffs alleged that some or all of the entity defendants altered Tivoli's Specification Sheets to add their own name in place of Plaintiffs to pass them off as Defendants' own. *Id.* ¶ 43. At certain points, Defendants "forgot to remove … Tivoli's name and/or trademarks from some of the [Specification Sheets]" that were distributed. *Id.* The entity defendants are also alleged to have "converted certain tooling owned by Tivoli." *Id.* ¶ 45.

Gregory Smith, Tivoli's former Director of Sales and Products, is alleged to have disclosed Tivoli's product specifications and technology to the entity defendants, to Tivoli's detriment. *Id.* ¶ 67. Plaintiffs further allege that Tivoli's former CEO Marie Birmingham disclosed Tivoli's product specifications to some or all of the entity defendants and conspired to direct customer projects to the entity defendants. *Id.* ¶ 116.

As a result of these actions, Plaintiffs bring nineteen claims against Defendants. In addition to claims directed at the individual Defendants Birmingham and Smith (Claims 7, 8, 9, 10, 14, 15), Plaintiffs bring two causes of action against Defendant Targetti Poulsen specifically, for Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing (Claims 11 and 12), and eleven causes of action against all Defendants: Copyright Infringement (Claim 1); Trademark Infringement (Claim 2); False Designation (Claim 3); Trademark Dilution (Claim 4); Trade Secret Misappropriation (Claim 5); Intentional Interference with Prospective Economic Advantage (Claim 6); Conversion (Claim 13); Civil Conspiracy (Claim 16); Unjust Enrichment (Claim 17); False Advertising (Claim 18); and Violation of California Business & Professions Code § 17200 (Count 19).

Defendants Targetti Poulsen, Targetti Sankey, and Hangzhou move to dismiss all claims against them.

## II. Legal Standard

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008) (internal quotation marks and citation omitted); *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005) ("Motions to strike are generally disfavored because of the limited importance of pleadings in federal practice and because it is usually used as a delaying tactic."). "Immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded" and "impertinent" matter is "statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks and citation omitted), *overruled on other grounds*, 510 U.S. 517 (1994). A motion to strike cannot be used to strike a claim for damages on the grounds that the damages sought are precluded as a matter of law. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010).

## III. Analysis

### A. Group Pleading

Movants argue that by grouping "Defendants" together in the Complaint, Plaintiffs failed to plead facts establishing each movant as a plausible defendant. At the heart of movants' argument is that the Complaint "lumps all defendants together under the defined term 'Defendants' or uses the indefinite incantation 'defendants Targetti Sankey, Targetti Poulsen, Duralamp and/or Hangzhou'." Mot. to Dismiss (Dkt. 17) at 11. This renders the pleadings defective, movants maintain, as overly speculative. *Twombly*, 550 U.S. at 570.

To satisfy Rule 8(a), a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). Challenges to "group" pleading typically arise in the context of fraud claims – subject to the heightened pleading standard of 9(b). *See Ramos v. Chase Home Fin.*, 810 F. Supp. 2d 1125, 1131 (D. Haw. 2011) (citing *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011)). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). A complaint may fail to provide fair notice of alleged misconduct under Rule 8(a), however, where it fails to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations. *See Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) ("In the few allegations where she alleges misconduct by a singular defendant, she fails to specify which one." (citations omitted)). In *Corazon*, the plaintiff's "lumping" practice was "particularly troubling" because, although she named a mortgage servicer, many of her allegations pertained "to the origination, not servicing, of her loan." *Id. See also Lyshorn v. J.P.Morgan Chase Bank*, No. 2013 WL 792632, at *2 (N.D. Cal. Mar. 4, 2013).

Group pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them. *See Frazier v. U.S. Bank Nat'l Ass'n*, 2013 WL 1337263 at *2–3 (N.D. Ill. Mar. 29, 2013) (holding that group pleading did not render complaint infirm where complaint provided fair notice of claims); *see also Sprint Solutions, Inc. v. Fils-Amie*, 2014 WL 4494146, at *2 (S.D. Fla. Sept. 12, 2014) (rejecting defendants' contention that Sprint's use of the term "Defendants" in the amended complaint requires dismissal).

Plaintiffs assert that its pattern of group pleading is acceptable in this circumstance. Plaintiffs stress that the Complaint should be read such that each of the defendants are accused of participating in all of the wrongful conduct alleged to have been carried out by some or all of the entity defendants. They also point out that all entity defendants are corporate affiliates and agents/employees of one another. Compl. ¶ 11. Further, as a result of the conspiracy allegations, Plaintiffs claim that they have adequately pled that each corporate defendants is liable for the others' actions.

Plaintiff frequently refers collectively to the four target entities – Targetti Poulsen, Hanzhou, and Duralamp, each subsidiaries of Targetti Sankey. Collective references to defendants often causes confusion when broad allegations are directed at a large and diverse group of defendants, obscuring which defendant is alleged to have committed which act. Here, the group is much narrower, closely related, and in the same general line of business, distinguishing these facts from those in *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("A contention that 'the defendants looted the corporation'—without any details about who did what—is inadequate" under Rule 8(a) where it was alleged that various managers and directors looted the firm, and the accountant failed to detect the defalcation). The pleadings in *Knight* lacked sufficient detail to put each party on notice of the wrongdoing alleged. Plaintiffs' complaint does not suffer from the same infirmity.

Thus, the Court agrees with Plaintiffs – the Complaint does not deprive each defendant of fair notice of the conduct attributed to them; instead, the Complaint can fairly be read to claim that each of the moving Defendants participated in the specific wrongful conduct alleged. As the entity defendants are alleged to be related entities, and given the nature of the claims, it is entirely possible that the allegations of wrongdoing are intended to include each and every entity defendant. The factual allegations in the Complaint explain in sufficient detail each entity's allegedly culpable conduct to put Defendants on notice of the claims. *See* Compl. ¶¶ 40-48, 67, 140-145, 148-150, and 171.

The Court rejects the contention that the "group" or "and/or" nature of the allegations require dismissal of the claims against movants. Defendants did not challenge the allegations for most of the specific claims. The Court will therefore only address specific arguments raised by the moving parties.

### B. Breach of Contract and Good Faith and Fair Dealing

Targetti Poulsen challenges Plaintiffs' eleventh and twelfth claims for relief, for breach of contract and breach of the implied covenant of good faith and fair dealing.[3]

The breach of contract action alleges that Targetti Poulsen deprived Plaintiffs Neo-Neon and American Lighting of consideration in the Tivoli Intellectual Property – breaching Section 1.1 of the Purchase Agreement. Compl. ¶¶ 140-141. Further, Plaintiffs allege Targetti Poulsen breached the Covenant of Nonsolicitation through hiring Defendant Smith. *Id.* ¶ 142-144. Through its "unlawful actions," Neo-Neon and American Lighting also allege Targetti Poulsen breached the implied covenant of good faith and fair dealing. *Id.* ¶¶ 147-151.

#### 1. Derivative Injury

Targetti Poulsen first argues that these claims must be stricken or dismissed for the same purported lack of specificity addressed above. As already explained, Plaintiffs have pled adequate facts with sufficient particularity to put Targetti Poulsen on fair notice of the charges against it.

Poulsen also argues that the causes of action are derivative to the injury to the company. In general, a member of a limited liability company may not sue for an injury suffered by the company. *PacLink Commc'ns Int'l, Inc. v. Superior Court*, 90 Cal. App. 4th 958, 964 (2001). Poulsen contends that Plaintiffs Neo-Neon and American Lightings' claims are predicated upon Tivoli's injury – and are therefore barred.

In response, Plaintiffs contend that Neo-Neon USA and American Lighting are not seeking to recover the diminution in value of their membership interest, but rather are seeking to recover damages resulting from breach of the agreement which they had with Targetti Poulsen.

Poulsen relies heavily on *PacLink*, which is inapplicable in this context. *PacLink* addresses claims for fraud brought by members of an LLC. It markedly did not reach the issue of a breach of contract brought by the member plaintiffs regarding its acquisition of the company. *PacLink*, 90 Cal. App. 4th at 962 (addressing causes of action for fraudulent transfer, conspiracy to defraud creditors and commit conversion, and imposition of a constructive trust).

---

[3] Targetti Poulsen challenges these claims both in its motion to dismiss and motion to strike. It raises the alternative motions as the Court may agree with Targetti Poulsen's challenges to "some but not all" of the alleged breaches. Mot. to Strike at 1.

Plaintiffs have adequately pled a separate contract between Neo-Neon USA and American Lighting, on the one hand, and Targetti Poulsen, on the other. Neo-Neon USA and American Lighting assert the breach of contract claim as purchasers of Poulsen's interest in the company. Neo-Neon USA and American Lighting also allege a direct injury through the breach, that they were deprived of the full benefit of their bargain with Targetti Poulsen by virtue of the misappropriation of Tivoli's intellectual property, therefore the action is not "purely derivative in character." Mot. to Strike at 6. Although the damages may later prove to overlap somewhat with those alleged by Plaintiff Tivoli, the nature of the claims do not lead to the conclusion that this claim is merely incidental to Tivoli's. Any duplicative damages may be dealt with at a later stage in the proceedings. The Court declines to strike paragraphs 140-143 and 147 on this basis.

### 2. Covenant of Nonsolicitation

Targetti Poulsen argues independently that the Court should strike Plaintiff Neo-Neon USA and American Lighting's claims alleging that Targetti Poulsen unlawfully solicited Gregory Smith (1) because of inconsistent factual allegations contained in the Complaint and (2) because nonsolicitation provisions are invalid under California law.

Under California law, contracts by which "anyone is restrained from engaging in a lawful profession, trade, or business of any kind" are prohibited. Cal. Bus. & Prof. Code § 16600. "Section 16600 presently sets out the general rule in California—covenants not to compete are void." *Hill Med. Corp. v. Wycoff*, 86 Cal. App. 4th 895, 901 (2001). "In the years since its original enactment as Civil Code section 1673, our courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008) (citing *D'sa v. Playhut, Inc.* 85 Cal. App. 4th 927, 933 (2000)). Nonsolicitation covenants typically fall within the realm of § 16600, and are treated similarly to covenants not to compete. *See, e.g.*, *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009) (finding a nonsolicitation clause void under Section 16600).

An exception lies for any person "who sells the goodwill of a business." Cal. Bus. & Prof. Code § 16601. Specifically, any person that sells "all or substantially all of its operating assets together with the goodwill of the business entity…may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business is sold." *Id.* "Section 16601 reflects that when the goodwill of a business is sold, it would be 'unfair' for the seller to engage in competition which diminishes the value of the asset he [or she] sold." *Hill Med.*, 86 Cal. App. 4th at 902 (citations omitted); *Monogram Indus., Inc. v. Sar Indus., Inc.*, 64 Cal. App. 3d 692, 701,

134 Cal. Rptr. 714, 720 (Ct. App. 1976) ("The thrust of Business and Professions Code section 16601 is to permit the purchaser of a business to protect himself or itself against competition from the seller which competition would have the effect of reducing the value of the property right that was acquired."). "[I]n order to uphold a covenant not to compete pursuant to section 16601, the contract for sale of the corporate shares may not circumvent California's deeply rooted public policy favoring open competition." *Hill Med.*, 86 Cal. App. 4th at 903.

Plaintiffs argue the nonsolicitation agreement falls within the "goodwill" exception of Section 16601. The "Covenant of Nonsolicitation," attached to the Purchase Agreement, provides that Targetti Poulsen shall not "solicit any person" who is at the time employed by Tivoli to leave Tivoli or to become employed by any other entity engaged in competition with Tivoli. Purchase Agreement at 18. Plaintiffs contend that this covenant is valid as part of the bargained-for consideration received upon Targetti Poulsen's sale of its shares of Tivoli – and that the restriction validly prevents the reduction of the value of the property acquired by Neo-Neon USA and American Lighting. Poulsen asserts that Section 16601 is wholly inapplicable here. The issue is whether a nonsolicitation clause which restrains the selling party (Poulsen) from later offering employment to the buyer's (Tivoli) employees is void under Section 16600 and not within the exception provided by Section 16601.

California's court have not squarely addressed this question. Indeed, there is a dearth of case law addressing so-called "anti-raiding" clauses, especially in the context of Section 16601.

In *Edwards v. Arthur Andersen LLP*, the California Supreme Court held that noncompete agreements are invalid under Section 16600, and rejected the Ninth Circuit's "narrow restraint" doctrine that allows such agreements if narrowly drawn. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 950 (2008). The *Edwards* case, upon which Poulsen relies, "articulates the broad principles and policy considerations behind section 16600; however, the facts of that case did not involve a 'no hire' or even a 'no solicitation' clause pertaining to the company's employees." *Thomas Weisel Partners LLC v. BNP Paribas*, 2010 WL 546497, at *5 (N.D. Cal. Feb. 10, 2010). In addition, the facts in *Edwards* did not involve the application of an exception. Indeed, the Court explicitly distinguishes the strict construction of 16600 from the review standard embodied in statutory exceptions. Discussing California law, the court noted:

> Fairly read, the foregoing authorities suggest section 16600 embodies the original, strict common law antipathy toward restraints of trade, while the section 16601 and 16602 exceptions incorporated

> the later common law 'rule of reasonableness' in instances where those exceptions apply.

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 948, 189 P.3d 285, 292 (2008).

Edwards does draw into question previous authority on the issue of employee nonsolicitation provisions. In *Loral Corporation v. Moyes*, the court of appeals held that an employee noninterference agreement (an employee nonsolicitation provision) was not a restraint on the employee working in his profession because he could still work for a competitor as long as he did not interfere with his former employer's contractual relationships or divulge the former employer's confidential information. *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 278-79 (1985). Therefore, it was not "void on its face under…Section 16600." *Id.* at 281. In reaching its determination, the court noted that "The potential impact on trade must be considered before invalidating a noninterference agreement." *Id.* at 278. Such a reasonableness assessment may be vulnerable under the holding in *Edwards*. *But see Sunbelt Rentals, Inc. v. Victor*, 2014 WL 492364, at *9 (N.D. Cal. Feb. 5, 2014) (finding a provision prohibiting former employee from recruiting company's employees was not void under section 16600 (citing *Loral*, 174 Cal. App. 3d. at 280); *Arthur J. Gallagher & Co. v. Lang*, 2014 WL 2195062, at *4 (N.D. Cal. May 23, 2014) (same).

Regardless, the facts and reasoning in *Loral* are still of assistance to this Court. *Loral* involved a termination agreement that prohibited the terminated employee from soliciting employees of his former company. *Id.* at 274. As to the impact on the company's employees, rather than the terminated party, the court found:

> This restriction only slightly affects [the current] employees. They are not hampered from seeking employment with [the subsequent employer] nor from contacting [the terminated employee]. All they lose is the option of being contacted by him first….Equity will not enjoin a former employee from receiving and considering applications from employees of his former employer, even though the circumstances be such that he should be enjoined from soliciting their applications.

*Id.* at 279-80. As to the goals of the provision the court noted, "The restriction presumably was sought by plaintiffs in order to maintain a stable work force and enable the employer to remain in business." *Id.* at 280. Although not considering the exception, these goals are entirely consistent with the underlying purposes of Section 16601.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL



Only one California case appears to discuss non-raiding provisions at the intersection with Section 16601. The Court in *Strategix Ltd. v. Infocrossing W., Inc.* considered employee nonsolicitation clauses within the reach of Section 16601, and noted that “courts may enforce nonsolicitation covenants barring the seller from soliciting *the sold business’s* employees and customers. These covenants prevent the seller from unfairly depriving the buyer of the full value of its acquisition, including its goodwill.” *Strategix, Ltd. v. Infocrossing W., Inc.*, 142 Cal. App. 4th 1068, 1073 (2006) (Citations omitted). It went on to distinguish cases in which parties attempt to restrain the solicitation of the new business’ employees and customers. *Id.* Although the case predates *Edwards, Edwards* does not undermine the court’s analysis, as *Edwards* did not consider nonsolicitation agreements in the context of Section 16601. *See also Fillpoint, LLC v. Maas*, 208 Cal. App. 4th 1170, 1183 (2012) (a nonsolicitation covenant under Section 16601 may be valid so long as it does not extend its anticompetitive reach beyond ‘the business so sold’).

The Court finds that the nonsolicitation clause in the purchase agreement falls within the exception of Section 16601. Under California law, Section 16601 encompasses agreements whereby the seller is restricted from soliciting the company’s employees. As written, Targetti Poulsen is restrained from pursuing Tivoli’s employees, thereby eroding the goodwill that Plaintiffs paid for in their acquisition of the remaining shares of Tivoli.

Significantly, Tivoli’s employees are not restrained from working for Targetti or its affiliates, so long as the employees are not solicited by Defendants. *See Loral*, 174 Cal. App. 3d at 279-280 (“This restriction only slightly affects [the current] employees.”). They are free to seek out employment with Targetti Poulsen or its affiliates. *See Thomas Weisel Partners*, 2010 WL 546497, at *5 (distinguishing no-hire provisions from nonsolicitation provisions). The restriction imposed on non-signatories to the agreement is de minimis, and does not interfere with California’s strong public policy favoring open competition.

Targetti Poulsen also argues that the agreement is invalid as it lacks geographic restraints. Geographic restraints in the context of Section 16601 are analyzed with reference to the noncompetition covenant. “The geographic scope of a noncompetition covenant must be limited to the area where the sold company carried on business because otherwise, a seller could be barred from engaging in its business in places where it poses little threat of undercutting the company it sold to the buyer.” *Alliant Ins. Servs., Inc. v. Gaddy*, 159 Cal. App. 4th 1292, 1301 (2008). Logically, for employee nonsolicitation clauses, an explicit geographic restriction is not needed to define the scope of the covenant. Indeed, the scope will typically be clear based upon the terms of the restriction. As Targetti Poulsen was only restricted from soliciting Tivoli’s current employees, the

scope of the agreement was limited to places where Tivoli was doing business—the competitive restraint extended only as far as the operations of the business that was sold. Strictly construing Section 16601, this restraint is adequately limited.

As the nonsolicitation agreement falls within the scope of Section 16601, it is not void under Section 16600. The motions are denied on these grounds.

### 3. Conflicting Allegations

Poulsen also asserts that Plaintiffs' inconsistent pleadings are grounds to strike portions of the complaint. Plaintiff alleges that Duralamp currently employs Smith, Compl. ¶ 9, and that Targetti Poulsen violated the nonsolicitation agreement by soliciting and hiring Smith. Compl. ¶¶ 142-43. Any confusion is resolved as the violation is alleged to have occurred through the actions of Targetti Poulsen or any of its affiliates. Plaintiffs have adequately alleged that Duralamp and Poulsen are affiliates. The Complaint is therefore not fatally inconsistent.

## IV. Disposition

For the foregoing reasons, the moving Defendants' Motions to Dismiss and Motion to Strike are DENIED.

The Clerk shall serve this minute order on the parties.